Filed April 18, 1888.

---

114 389
128 227
114 389
164 589
114 389
f166 223

No. 11,929.

THE STATE, EX REL. POYSER ET AL., *v.* THE TRUSTEES OF SALEM CHURCH ET AL.

MANDATE.—*Limitation of Use of Writ.*—The use of the writ of mandate is limited to the enforcement of obligations imposed by law.

SAME.— *Corporation.*—*Duty Growing Out of Contract.*—Where the duties of a corporation, or of its trustees, grow out of matters of contract, writs of mandate will not lie against the corporation or its trustees, either in their corporate capacity or as individuals, to compel the performance of the contract, but the aggrieved party will be left to the ordinary remedies.

The State, *ex rel.* Poyser *et al., v.* The Trustees of Salem Church *et al.*

SAME.—*Religious Society.— Use of Church Building by Other Denominations.*—
The trustees of a Methodist church corporation solicited subscriptions·
to a building fund. To induce persons who were not members of the
religious denomination represented by them to subscribe to such fund,
it was stipulated in the subscription papers, with the consent of the
corporation, that the house to be erected should be free to all orthodox
denominations when not occupied by the Methodists. Relying upon
this stipulation, members of other denominations subscribed and paid
various sums of money. Some time after the completion of the build-
ing, the Methodist corporation refused to permit other denominations
to use the house. Complaint by subscribers to the building fund, asking
that a writ of mandate may issue to compel the trustees of the Meth-
odist Church to designate a time when another denomination may
occupy the building.

*Held,* that the duty, the performance of which is sought to be compelled,
is not one "resulting from an office, trust or station," and that, under
section 1168, R. S. 1881, mandate will not lie.

. From the Noble Circuit Court.

*A. A. Chapin* and *R. P. Barr,* for appellants.
*J. H. Baker* and *F. E. Baker,* for appellees.

. HOWK, J.—In this case error is assigned here by plaintiff's
relators which calls in question the correctness of the trial
court's conclusions of law upon its special finding of facts.
Cross-errors have been assigned here by appellees, defend-
ants below, (1) upon the overruling of their demurrers to
relators' complaint and alternative writ of mandate, and (2)
upon the overruling of their demurrer to relators' reply to
their answer and return to relators' alternative writ of man-
date herein. In the natural order of things the questions
arising under the first of these cross-errors will be first con-
sidered and decided.

This suit was commenced in the name of the State of In-
diana, as plaintiff, on the relation of George K. Poyser and
William A. King, against the Trustees of the Salem Church
of the Methodist Society of Haw-Patch Circuit, of the
Western Circuit of Michigan, *alias* the Trustees of the Salem
Methodist Protestant Church, and Alonzo T. Poyser, David

E. Damy, John Hostetter, John Hite and Alvin H. Ramsby, as defendants.

In their complaint and alternative writ of mandate herein, relators alleged that defendant, Trustees of the Salem Methodist Protestant Church, was a religious society organized as a corporation, under the laws of the State of Indiana, and that defendants Poyser, Damy, Hostetter, Hite and Ramsby were its trustees; that, on the 23d day of March, 1874, and from that time until 1878, the defendant corporation occupied for religious worship a church building situated on a certain parcel of real estate, particularly described, in Noble county, Indiana; that in 1878, such building having become old and insufficient for the needs of the community as a place of religious worship, defendant corporation, by its trustees, determined to erect a new building; that there were then residing in that vicinity many persons who were members of other christian churches, and others who, not belonging to any church organization, were nevertheless accustomed to attend religious services at said place; that, in order to raise the necessary funds to erect such new building, the trustees of such defendant corporation organized themselves into a building committee, and associated with themselves, as a member of such committee, relator George K. Poyser, and to induce other persons, who were not members of such church corporation, to subscribe to such new building fund, such trustees prepared written subscription papers, having a stipulation written in the body of some of them and endorsed upon others. A copy of such subscription paper, with such endorsement thereon, was filed with the complaint and alternative writ; but the other kind of subscription papers was in defendant's hands, and no copy thereof could be obtained and filed by relators.

And the relators averred that all such subscription papers were precisely alike, except as aforesaid and as to names of subscribers and sums subscribed; that such stipulations, therein or thereon, were to the effect that the new house to

be erected should be free to all orthodox denominations when not occupied by defendants' church; that such subscription papers, with the knowledge and consent of defendant corporation, were circulated by such building committee, and subscriptions solicited and obtained, upon the conditions aforesaid; that, relying upon such stipulation and condition, relator Poyser subscribed on one of such papers the sum of $135, relator King subscribed $125, and other persons, not members of defendants' church, also subscribed various other sums upon such conditions, in all amounting, with relators' subscriptions, to about $1,400, and that the aggregate amount of subscriptions made by all persons, upon the conditions aforesaid, was about $3,000; that relators paid in full their several subscriptions, as did, also, nearly all the other subscribers, and all such subscriptions were accepted by defendants, and the money paid thereon was received by them upon such conditions, and used in erecting a new church building upon the premises aforesaid in 1879.

And relators further said that, for some years after the erection and completion of such church building, defendants permitted other religious denominations to hold meetings and worship in such church building on the Sabbath, as stated and agreed in the conditions aforesaid in such subscriptions, at such times as the same was not occupied by defendants' church denomination; that such building was in the country, away from any village, town or city, and defendants' church was not accustomed to hold religious services upon each Sabbath day, or, if they did, they did not hold such services more than twice a day; and there being members of a religious denomination known as the Christian Church residing in that vicinity, who had made and paid subscriptions to such building fund, who desired to worship in said building under the ministrations of a minister of said church, in good and regular standing, it was arranged and understood that said minister might hold religious services in such church at regular intervals, at such times as the same was not occupied

by the defendants' church; that, in pursuance of said arrangement, the said minister had been accustomed to hold divine service according to the methods of his denomination in said building at three o'clock P. M. on the Sabbath day; but that, with the intent of excluding him and his denomination from holding such services in such church building, defendants had of late changed their appointments so as to interfere with the appointments of said minister.

And relators further averred that the said minister and those acting with him, with a view of avoiding any collision or interference with defendants, changed their appointment to another hour of the day, and so notified defendants; that thereupon defendants notified the said minister that he could no longer hold any religious service or meeting in said church building at any time, except funeral services, and since the 18th day of January, 1883, had absolutely refused to permit the said Christian Church denomination, by its pastor aforesaid and under his ministrations, to worship or hold meetings in said church, except funeral services; that said Christian Church was an orthodox denomination, and, by the stipulations and agreement in said subscription papers, was of right entitled to use said building when not occupied by defendants or other orthodox denominations; that defendants' church did not occupy said building at all hours of the Sabbath day, nor did it honestly and sincerely propose so to do, but that there was sufficient time on each Sabbath day for said Christian Church denomination to hold services therein when the same was not used by defendants' church, or by any other denomination, but the purpose of defendants' church was to entirely exclude said Christian Church denomination from holding religious services in said church building; that defendants' acts in the premises were in direct contraversion of their agreement and duty, made and imposed by receiving said subscriptions as aforesaid; and that the said minister of the said Christian Church was ready and willing to hold religious services for his denomination in said building at such

hours as the same was not necessarily occupied on the Sabbath day by defendants' church, and relators and others, as subscribers to said fund and members of said Christian Church, were desirous that their said minister should hold meetings and religious services there at such times. Wherefore, relators asked for the issue of a mandate, commanding defendants to permit the Christian Church denomination, under the ministrations of its pastor, to hold religious services in the aforesaid church building at such reasonable and convenient time on the Sabbath day as the same might not be occupied, and to designate such time; or, in default thereof, that the court might determine such time as such building would not be needed for use by defendants' church, and when it might be used by such Christian Church denomination, etc.

We are of opinion that the court below erred in overruling defendants' demurrer to relators' complaint and alternative writ of mandate, for the reason that the case made by the allegations thereof, the substance of which we have given, is not one in which, under our civil code, a writ of mandate may be issued. In section 1168, R. S. 1881, in force since September 19th, 1881, it is provided as follows: "Writs of mandate may be issued to any inferior tribunal, corporation, board, or person, to compel the performance of an act which the law specially enjoins, or a duty resulting from an office, trust, or station."

It is not claimed by the relators that they seek in this suit to compel the performance of an act which the law specially enjoined upon the defendants herein. But relators claim that, by reason of the facts they allege, a duty rested upon the defendants, and they seek in this action to compel, by mandate, the performance of that duty. The defendants are the trustees of the Methodist Protestant Church, and the church itself, who own a certain described parcel of real estate in Noble county, and a church building, erected by the defendants on such real estate. The duty resting on the defendants, as alleged by the relators herein, is the duty to

allow the Christian Church denomination, an orthodox denomination, to occupy and use the said church building, erected as aforesaid, during certain specified hours on the Sabbath day for religious services, when such building should not be, or was not, occupied by defendants' church.

At the foundation of the relators' claim in this suit, and of the suit itself, are the subscription papers, under and by means of which the funds were. raised wherewith the new church edifice was erected by defendants, the occupancy and use whereof, during certain or uncertain hours of the Sabbath day, are the matters in controversy herein. These subscription papers were, in substance, as follows: "We, the undersigned subscribers, agree to pay the sums set opposite to our respective names, for the purpose of the building of a church on the ground on which the 'Old Salem Church' now stands. Said amount to be paid to the trustees or building committee appointed to build said church. Dated Perry township, Noble county, Indiana, August 26th, 1878." In the body of some of the subscription papers, and endorsed on the others, was the following memorandum, to wit: "Methodist Protestant Church. This house to be free to all orthodox denominations, when not occupied by said church. Subscriptions to be paid as follows," etc.

There can be no doubt, we think, that when subscriptions were made and paid, as alleged, by persons who were not members of the Methodist Protestant Church, and whose religious sympathies or prejudices inclined them to attend upon the ministrations of other orthodox denominations, upon their reliance on the memorandum last above quoted, ordinary good faith required that the church building, erected in part at least with their money thus obtained, should be free for the services of the orthodox denomination of their choice, when the same was not occupied on the Sabbath day, or on any other day of the week, by the Methodist Protestant Church. But it does not follow from what we have said, by any means, that the trustees of the Salem Methodist Prot-

estant Church, either in their corporate name and capacity or as individuals, can be compelled by mandate to designate any hour of the Sabbath day, or of any other day of the week, wherein the Christian Church or its pastor, or any other orthodox denomination, may occupy and use such building for religious services, even when the same may not and will not be occupied by said Methodist Protestant Church. The duty to designate such hour or time, if there be such duty resting upon said corporate church, or upon its trustees as individuals, is not "a duty resulting from an office, trust, or station." If such duty exist, and we do not controvert but rather concede that it does exist, it results wholly from the contract or agreement embodied in, or endorsed upon, the aforesaid subscription papers, and heretofore set out in this opinion. The enforcement of such a duty, if it can be enforced, is a matter of exclusively equitable cognizance. The performance of such a duty can not be enforced by mandate.

Duties imposed on a corporation, not by virtue of express law, nor by the conditions of its charter, but arising wholly out of contract relations, will not be enforced by *mandamus,* since the use of such writ is limited to the enforcement of obligations imposed by law. Where the duties of a corporation, or of its trustees, grow out of or result from matters of contract, writs of mandate will not lie against the corporation or its trustees, either in their corporate capacity or as individuals, to compel the performance of the contract, but the party aggrieved will be left to the ordinary remedies, either at law or in equity. *State, ex rel.,* v. *Zanesville, etc., T. P. Co.,* 16 Ohio St. 308; *State, ex rel.,* v. *Paterson, etc., R. R. Co.,* 43 N. J. (Law) 505; *State* v. *Republican River Bridge Co.,* 20 Kans. 404; *People, ex rel.,* v. *Dulaney,* 96 Ill. 503; High Ex. Leg. Rem., section 321.

Relators have mistaken their remedy, if any they have, upon the facts stated in their complaint and alternative writ, for the case made thereby is not one in which mandate will

lie.   Defendants' demurrer to relators' complaint and alternative writ of mandate ought to have been sustained.

This conclusion renders it unnecessary for us to consider any of the questions arising under the error assigned by the relators herein.   Where, as here, the plaintiff appeals, and the complaint fails to state a cause of action against the defendants, intervening errors, if any there be, must be regarded here as harmless, and the judgment below must be affirmed.   Fell v. Muller, 78 Ind. 507 ; Rawson v. Pratt, 91 Ind. 9 ; Clawson v. Chicago, etc., R. W. Co., 95 Ind. 152.

The judgment is affirmed, with costs.

MITCHELL, C. J., took no part in the decision of this cause.

