TRUDY SLABY ETHERTON, AUDITOR OF STATE OF INDIANA, JOHN
K. SNYDER, TREASURER OF STATE OF INDIANA, THOMAS TAYLOR,
DIRECTOR OF THE BUDGET AGENCY OF THE STATE OF INDIANA *v.*
ROBERT W. WYATT, CHARLES T. REECE, HENRY L. MCHARGUE,
BOARD OF TRUSTEES OF THE INDIANA TEACHERS'
RETIREMENT FUND.

[No. 1-672A10.  Filed March 7, 1973.]

442

*Theodore L. Sendak*, Attorney General, *Wendell C. Hamacher*, Chief Counsel-Staff, *Edward W. Johnson*, Assistant Attorney General, *Darrel K. Diamond*, Deputy Attorney General, for appellants.

*Jonathan L. Birge, Bingham, Summers, Welsh & Spilman*, of Indianapolis, *Peter L. Obremskey, Parr, Richey, Obremskey, Pederson & Morton*, of Lebanon, for appellees.

ROBERTSON, P.J.—The State is appealing the granting of an injunction mandating the transfer of certain monies from the State's General Fund to the Indiana State Teachers' Retirement Fund.

The plaintiff-appellees Wyatt and Reece filed suit for the

injunction on June 27, 1969, in Marion Superior Court, Room 6. Thereafter the complaint was amended to include McHargue as a party plaintiff.

The State moved for a change of venue with the resulting transfer to the Boone Circuit Court in early April, 1970. A second amended complaint was filed with the three plaintiffs being joined in their capacity as Trustees of the Teachers' Retirement Fund. The cause was subsequently tried before the court. The judgment of the court ordered the transfer of $26,478,000 from the unappropriated General Fund surplus to the Indiana State Teachers' Retirement Fund. The Special Findings of Fact and Conclusions of Law were:

"1. The individual plaintiffs are members of the Indiana State Teachers' Retirement Fund.

2. The control and management of the Indiana State Teachers' Retirement Fund is vested in the plaintiff Board of Trustees pursuant to the Acts of 1915, ch. 182, S. 3, as amended, as found in Burns Ind. Ann. Stat. 28-4803 (1970 Replacement. IC 1971, 21-6-1-3).

3. That Mary Aikens and Jack L. New are the duly elected and acting Auditor and Treasurer respectively of the State of Indiana, and are the successors in office of the original defendants named in their official capacity, and the defendant Thomas Taylor is the duly appointed and acting Director of the Budget Agency of the State of Indiana.

4. The Indiana State Teachers' Retirement Fund is financed by contributions by teachers and by the State of Indiana.

5. That the teachers of the State of Indiana voted in 1955 to come under the provisions of Chapter 329, Acts of 1955, and Section 23 of that Act (the same being Burns Ind. Ann. Stat. 60-1934, IC 1971, 51-10-3-25) requires in part the State to appropriate enough funds each year to the pension account and fund of the Teachers' Retirement Fund to prevent an increase in the unfunded liability of the pension account.

6. In 1967, pursuant to Chapter 298, Section 2 of the Acts of 1967, the Indiana General Assembly appropriated the sum of $35,500,000 as the State's contribution to the pension fund of the Indiana State Teachers' Retirement Fund for the fiscal year beginning July 1, 1967, and ending June 30,

1968, and also appropriated the sum of $35,500,000 as the State's contribution to the pension fund of the Indiana State Teachers' Retirement Fund for the fiscal year beginning July 1, 1968, and ending June 30, 1969, both to be paid from the State's General Fund.

7. In fiscal 1967-68 the State Budget Agency allotted only $24,522,000 from said appropriation to the pension fund of the Indiana State Teachers' Retirement Fund, and thereby reduced the appropriation for that year by $10,-978,000.

8. In fiscal 1968-69 the State Budget Agency allotted only $20,000,000 from said appropriation to the pension fund of the Indiana State Teachers' Retirement Fund, and thereby reduced the appropriation for that year by $15,-500,000.

9. The 1967-69 biennium was the first time that the State Budget Agency had not allotted the full amount of the legislative appropriation to the pension fund of the Indiana State Teachers' Retirement Fund.

10. At the end of fiscal 1967-68, on June 30, 1968, the General Fund of the Treasury of the State of Indiana had an unappropriated surplus of approximately $37,455,000.

11. At the end of fiscal 1968-69, on June 30, 1969, the General Fund of the Treasury of State of Indiana had an unappropriated surplus of approximately $30,321,000.

12. In fiscal 1967-68 actual revenues were approximately 2.3 percent lower than revenues estimated for that year by the State Budget Agency at the time of the 1967 legislature, but the pension fund appropriation for the Indiana State Teachers' Retirement Fund was reduced by the State Budget Agency for that year by approximately 31 percent.

13. In fiscal 1968-69 actual revenues were approximately 3.3 percent lower than revenues had been estimated for that year by the State Budget Agency at the time of the 1967 legislature, but the pension fund appropriation for the Indiana State Teachers' Retirement Fund was reduced by the State Budget Agency for that year by approximately 43 percent.

14. The State Budget Agency had knowledge prior to the end of fiscal 1967-68 that there would be a sufficient unappropriated surplus in the General Fund of the Treasury of Indiana at the end of that fiscal year to pay the entire amount of the $35,500,000 appropriation to the Indiana State Teachers' Retirement Fund, as evidenced by the

memorandum from John Hatchett to Governor Branigin. (Plaintiffs' Exhibit No. 9).

15. The State Budget Agency, in reducing the appropriations of the Indiana State Teachers' Retirement Fund, did not consider the effect such reductions would have on the unfunded accrued liability or the vested contractual obligations of the State of Indiana.

16. The appropriations for the main operating budgets of four state universities (Indiana, Purdue, Indiana State and Ball State) were not reduced at all by the State Budget Agency during fiscal 1967-68 and 1968-69.

17. The State Budget Agency had no written guidelines with regard to the administration of the allotment system during the 1967-69 biennum.

18. A recent audit (March, 1971) of the financial condition of the Indiana State Teachers' Retirement Fund by the State Board of Accounts indicated that as of June 30, 1970, that approximately $2,700,000 of the employee contributions had been used to meet the State's obligations to the pension fund. (Plaintiffs' Exhibit No. 10).

19. The unfunded accrued liability for retired members of the Indiana State Teachers Retirement Fund rose during the 1967-69 biennium by approximately $26,000,000.

The Court finds the conclusions of law to be the following:

1. The Acts of 1955, Chap. 329, Section 23(b), being Burns Ind. Ann. Stat. 60-1934(b) reading in pertinent part as follows:

'60-1934. Appropriations by the state.—The amount to be appropriated by the state for any biennium for the purposes of Article III (Sec. 60-1923—60-1940 [IC 1971, 5-10-3-13—25-10-3-31]) of this act shall be the sum of the following:

* * *

(b) At least the amount required to prevent an increase in the amount of the unfunded accrued liability of the state as defined in Section 22(b)(iii) Sec. 60-1933(b) (iii) [IC 1971, 5-10-3-24(b)(iii)] during said period.'

was at all times material herein in full force and effect.

2. The State Budget Agency's reduction of the appropriation to the pension fund of the Indiana State Teachers' Retirement Fund during the 1967-69 biennium was contrary to Burns Ind. Ann. Stat. 60-1934(b) in that such reduction permitted an increase in the amount of the unfunded ac-

crued liability of the state to the pension fund of the Indiana State Teachers' Retirement Fund.

3. The State Budget Agency's reduction of the appropriation to the pension fund of the Indiana State Teachers' Retirement Fund during the 1967-69 biennium was arbitrary and capricious and constituted arbitrary and capricious state action in violation of the Fourteenth Amendment to the Constitution of the United States.

4. The State Budget Agency's reduction of the appropriation to the pension fund of the Indiana State Teachers' Retirement Fund during the 1967-69 biennium impaired the obligation of contractual rights of retired members of the Indiana State Teachers' Retirement Fund in violation of Article I, Section 24 of the Constitution of the State of Indiana."

By way of its overruled motion to correct errors, the State on appeal, is claiming error as to the jurisdiction of the Boone Circuit Court, and as to the correctness of each of the court's four conclusions of law.

The State asserts that the Boone Circuit Court lacked jurisdiction over the subject matter because IC 34-4-16-1, Ind. Ann. Stat. § 3-3401 (Burns 1968) requires the Superior Court of Marion County, sitting en banc, to try cases involving money demands against the State of Indiana.

We are of the opinion the following rule negates the State's position:

"Other venue statutes superseded by this rule. Any provision of these rules and any special or general statute relating to venue, the place of trial or the authority of the court to hear the case shall be subject to this rule, and the provisions of any statute fixing more stringent rules thereon shall be ineffective. *No statute or rule fixing the place of trial shall be deemed a requirement of jurisdiction.*" (Emphasis added). TR. 75(D), IC 1971, 34-5-1-1.

The rule is further explained:

"As observed in the comments of the Civil Code Study Commission, the Rule now applies to the state, so that the oppressive statute formerly contrued as allowing claims against the state only to be litigated in the superior court

of Marion County has now been broadened to permit suit in any county of the state subject only to the preferred venue requirements of Rule 75(A) and particularly subdivision (5) thereof. Compare Burns § 3-3401." 4 Harvey & Townsend Indiana Practice § 75.8, at 540.

It would, therefore, appear that IC 34-4-16-1, Ind. Ann. Stat. § 3-3401 (Burns 1968) is no longer effective in fixing jurisdiction or venue in this type of case, and we are thus compelled to hold that the Boone Circuit Court did not lack jurisdiction over the subject matter of this cause.

The State next contends the trial court erred in its Conclusions of Law Nos. 1 and 2. It is their position that the statute relied upon by the court, as set out in the first Conclusion of Law, was repealed by implication with the passage of the following statute, which reads:

"In the year 1958 and in each year thereafter, no tax shall be levied pursuant to the provisions of section 1 [this section], subsection (g), of chapter 275 of the Acts of the general assembly of 1955. In lieu of such tax levy, in the year 1959 and in each year thereafter, there shall be appropriated from the state general fund an amount which, when added to funds hereby authorized to be transferred from the state general fund by the state board of finance, will be sufficient to provide in each teacher's account the funds necessary to cover the actuarial liability incurred by the state of Indiana for the payment of an annuity of ninety dollars [$90.00] per month after thirty [30] years of service as determined by the actuarial investigation above provided. On the basis of the actuarial investigations herein provided, and for the other expenditures herein provided, the trustees of the Indiana State teachers' retirement fund hereafter shall sumit its budget to the governor or to such other officer or committee as shall be by law authorized to recommend to the general assembly the necessary appropriation as authorized in lieu of any tax levy, and *the general assembly shall make such appropriation which shall be sufficient to provide the necessary funds to cover the estimated liability of the state of Indiana under this act to be liquidated during the current year and the succeeding year* and the liability of the state of Indiana under this act may be reduced by the

board by an amount equal to the interest earned by the board on deposits in the fund of state moneys hereby authorized to be made by the state board of finance or its successor agency of state government. . . . (Emphasis added.)

It is urged on behalf of the State that insofar as Burns 60-1934 (b) requires the Legislature to appropriate enough money to the Teachers' Retirement Fund to prevent an increase in the unfunded accrued liability it has been repealed by implication of the language in Burns 28-4806 (h) IC 1971, 21-6-1-6 (h), that "the general assembly shall make such appropriation which shall be sufficient to provide the necessary funds to cover the estimated liability of the state of Indiana under this act to be liquidated during the current year and the succeeding year." In its Conclusions of Law Nos. 1 and 2, the court found that Burns 60-1934 (b) was at all material times in full force and effect, and that the Budget Agency's reduction of the appropriation to the Fund was contrary to Burns 60-1934 (b) in that the reduction permitted an increase in the unfunded accrued liability of the State to the Teachers' Retirement Fund.

The courts of Indiana have recognized the principle of repeal by implication and have adopted certain rules governing such a repeal.

". . . The general rules as to repeal by implication are: (1) Repeals by implication are not favored; and (2) Where there are two acts on the same subject, effect shall be given to both if possible; and (3) *But, if the two are repugnant in any of their provisions, the later act, without any repealing clause, operates to the extent of the repugnancy as a repeal of the first; and even when two acts are not in express terms repugnant, yet if the latter act covers the whole subject of the first, and embraces new provisions, plainly showing that it was intended as a substitute for the first act, it will operate as a repeal of that act.*" (Emphasis added). *DeHaven* v. *Municipal City of South Bend* (1937), 212 Ind. 194, 198, 7 N.E.2d 184, 186. Also see: *Kramer* v. *Beebe* (1917), 186 Ind. 349, 115 N.E. 83. *Payne, President et al.* v. *Buchanan et al.* (1958), 238 Ind. 231, 148 N.E.2d 537. (Reh. Denied, 150 N.E.2d 250).

It is our opinion in the instant case that the language of the later act, Burns 28-4806(h), is repugnant to that of Burns 60-1934(b), and by implication Burns 60-1934(b) has been repealed to the extent that it requires funding in an amount sufficient to prevent an increase in the unfunded accrued liability of the State to the Teachers' Retirement Fund. Of equal import is the fact that Burns 60-1934(b) is a general statute dealing with all the various state retirement systems, while Burns 28-4806(h) deals specifically with only the Teachers' Retirement Fund.

"A general statute may be repealed, limited or modified by implication to the extent that a later statute of a more special nature is inconsistent with the earlier Act." *O'Donnell* v. *Krneta et al.* (1958), 238 Ind. 582, 592, 154 N.E.2d 45, 50. Also see: *Burd* v. *McCullough (C. C. A.-7)* (1954), 217 F. 2d 159; *DeHaven* v. *Municipal City of South Bend, supra;* and *Western & Southern Indemnity Co.* v. *Cramer* (1937), 104 Ind. App. 219, 10 N.E.2d 440.

Accordingly, we find the trial court erred in its Conclusions of Law Nos. 1 and 2. However, for the reasons hereafter set out, we are not of the opinion that the court's Conclusions of Law Nos. 1 and 2 constituted reversible error.

It should be pointed out that argument has been made by both parties to this appeal that the manner in which the Legislature has appropriated funds to the Teachers' Retirement Fund in the past supports their particular position as to which statute is controlling. The respective answers to these arguments raise the implication, by design or otherwise, that the Legislature has failed in the past to properly fund the Teachers' Retirement Fund. Indeed, the practices of the Legislature do not lend any certainty to a determination as to which statute is controlling as evidenced by the fact in the 1967 appropriation act, as in several years prior thereto, the General Assembly failed to make an appropriation which would have been sufficient to prevent an increase in the unfunded accrued liability as required by Burns

60-1934(b), but yet it specifically made the appropriation "in lieu of any appropriation authorized by Chapter 293 of the Acts of 1957" (Burns 28-4806). However, we do not find it necessary to the resolution of this appeal nor within our judicial function to determine the propriety of a legislative appropriation of funds. *Carr, Auditor, et al.* v. *The State, ex rel. Coetlosquet* (1890), 127 Ind. 204, 26 N.E. 778.

Under its Conclusion of Law No. 3, which the State challenges, the trial court found that the Budget Agency's reduction of the appropriation to the Teachers' Retirement Fund was "arbitrary and capricious and constituted arbitrary and capricious state action." In contending that the action of the Budget Agency in reducing the appropriation was not arbitrary and capricious, the State relies heavily upon IC 4-13-2-18, Ind. Ann. Stat. § 60-1820 (Burns 1961) as statutory authority for the propriety of the reduction. Of primary concern is Burns 60-1820 (f) :

> "In case the state budget committee shall discover at any time that the probable receipts from taxes or other sources for any fund will be less than were anticipated, and that as a consequence the amount available for the remainder of the term of the appropriation or for any allotment period will be less than the amount estimated or alloted therefor, he shall, with the approval of the governor, and after notice to the state agency or agencies concerned, reduce the amount or amounts allotted or to be allotted so as to prevent a deficit."

It would appear that under this provision there are three basic requirements, other than approval by the governor and notice to the agency concerned, which must be fulfilled before the Budget Agency is empowered to reduce an appropriation: (1) probable receipts will be less than anticipated; (2) the amount available for the remainder of the term of the appropriation will be less than the amount appropriated; and (3) the reduction of the allotment must be so as to prevent a deficit. With regard to the first requirement, probable receipts for fiscal 1967-68 were

approximately 2.3% lower than anticipated for that year by the State Budget Agency at the time of 1967 Legislature, and in fiscal 1968-69 they were approximately 3.3% lower. Thus it would appear under the facts of this case that the first requirement was satisfied. As to the two remaining requirements, however, the evidence clearly shows that the amount available for the remainder of the term of the appropriation was not less than the amount of the allotment, or that the allotment was necessary so as to prevent a deficit. To the contrary, it appears that in fiscal 1967-68 the appropriation to the Teachers' Retirement Fund was reduced by $10,978,000 while at the end of fiscal 1967-68 there was an unappropriated surplus in the General Fund of $37,455,000, and in fiscal 1968-69 the reduction was $15,500,000 with an unappropriated surplus of $30,321,000 at the end of the fiscal year. In both years the Budget Agency had knowledge prior to the end of the term of the appropriation that an unappropriated surplus would exist at the end of the fiscal year, and subsequent to discovery of the surplus there was no effort to allot the remaining portion or a part thereof of the appropriation to the Teachers' Retirement Fund.

It is further significant that Burns 60-1820 (d) requires the Budget Agency in administering the allotment system to consider the prospective needs of a state agency. The evidence in the instant case clearly established that the Budget Agency did not consider the needs of the Teachers' Retirement Fund nor the effect of the reduction on the Fund. According to the testimony of the Budget Director no formula or set standards were used in determining the amount of the reduction. Moreover, it appears that no studies or investigations were made of such matters as the relative positions of the various pension systems, the vested contractual liability of the State to the Teachers' Retirement Fund, the increasing unfunded liability of the State to the Fund, and whether teachers' contributions were being used or in danger of being used to meet the State's obligation.

This court has defined arbitrary and capricious action as ". . . willful and unreasonable action, without consideration and in disregard of the facts or circumstances of the case; action taken without some basis which would lead a reasonable and honest man to such action. . . ." *St. Bd. of Tax Comm'rs.* v. *Chicago, etc., R. C.* (1951), 121 Ind. App. 302, 96 N.E.2d 279. Also see: *Kinzel* v. *Rettinger* (1972), 151 Ind. App. 119, 277 N.E.2d 913; *Burton* v. *Rock Rd. Const. Co.* (1969), 145 Ind. App. 683, 252 N.E.2d 445; *St. Bd. of Tax Comm. of Ind.* v. *Traylor* (1967), 141 Ind. App. 324, 228 N.E.2d 46. It is our opinion that in the instant case there was evidence from which the trial court could reasonably find that the State Budget Agency acted "without some basis which would lead a reasonable and honest man to such action."

The State has further sought to justify the reduction on the basis that the legislative appropriation was more than the amount required under the substantive law. Indeed, the Legislature did appropriate for each of the respective fiscal years funds substantially in excess of an amount necessary to cover the estimated liability of the State to be liquidated in the current year as required by Burns 28-4806 (h) which we heretofore found controlling. As the State theorizes, the General Assembly may have hoped by the additional appropriation to build some reserve into the Fund which would appear to be an actuarily sound policy. We are of the opinion that if the Legislature chooses, for whatever reason, to make an appropriation in excess of the amount required under the substantive law the appropriation cannot be reduced by the Budget Agency for that reason alone. It is clear that Burns 28-4806 (h) deals solely with the legislative appropriation to the Teachers' Retirement Fund and does not confer any authority upon the Budget Agency to modify or reduce those appropriations. As previously discussed, if the Budget Agency is to derive the statutory power to reduce an appropriation it must do so under Burns 60-1820 which confers such authority.

It is worthy of mention to disclaim that the intent underlying the holding of this opinion is not to suggest that the executive branch of state government through the Budget Agency is without the authority to review, modify, and even reduce legislative appropriations. We are cognizant of the need for flexibility by the Budget Agency in dealing with the arduous task of balancing the state budget. However, if the Budget Agency is to reduce a legislative appropriation, it must do so in conformity with the statutory requirements and upon some reasonable basis to support its action. In the instant case we are unable to find that these standards have been fulfilled.

The final issue raised by the State relates to Conclusion of Law No. 4, in which the court found that the Budget Agency's reduction of the appropriation "impaired the obligation of contractual rights of retired members of the Indiana State Teachers' Retirement Fund". Although the State's argument challenging this conclusion is cursory at best, we are nonetheless correctly referred to the applicable law as set forth in *Klamm et al.* v. *State of Indiana ex rel. Carlson* (1955), 235 Ind. 289, 126 N.E.2d 487:

> "While the police pension fund here in question is accumulated by taxation, by contributions, and awards of various sorts, and by enforced contribution by members of the police force, the great weight of authority holds that such pensions are gratuities; that they involve no agreements of the parties and create no vested rights, notwithstanding compulsory contributions from the members pay. Until retirement, the police officer has no vested right in pension payments. . . .

> Where the statutory conditions for retirement existing when the application is made have been met, and the award of the pension has been made, or as of right should have been made, the pensioner's interest becomes vested and takes on the attributes of a contract, which, in the absence of statutory reservations, may not legally be diminished or otherwise adversely affected by subsequent legislation." *Klamm, supra,* 235 Ind. 292, 126 N.E.2d 489.

Just as the Legislature may not adversely affect the interests of a retirement plan member whose rights have vested upon retirement, the same is true of the Budget Agency when acting under the authority of powers delegated to it by the Legislature. In the instant case, the State contends that the vested rights of retired teachers were not adversely affected by the action of the Budget Agency as evidenced by the fact that no retired teacher failed to receive his retirement benefit check during the biennium in question. While it may be true that during the 1967-69 biennium all teacher retirement benefits due were paid, it nonetheless appears under the trial court's Finding of Fact No. 18, that approximately $2,700,000 of teachers' contributions were used to meet the State's obligations to the Teachers' Retirement Fund. The State has challenged the court Finding of Fact No. 18 for the reasons that there was no evidence as to when or why teachers' contributions were used and that a portion of a report of the State Board of Accounts showing the use of teachers' contributions was hearsay. We are unable to concur in the State's position that there was no evidence as to when and why the use of teachers' contributions took place. In two letters, which were admitted into evidence, dated July 17, 1968, and March 28, 1969, the Executive Secretary of the Teachers' Retirement Board warned the governor that reductions by the Budget Agency of the appropriation to the Fund presented the danger that teachers' contributions would have to be used to meet the State's obligation. We believe that this evidence warranted at least an inference that the use of teachers' contributions to meet the State's obligation to the Fund occurred subsequent to, and as a direct result of, the Budget Agency's action in reducing the appropriation. Furthermore, we are unable to find reversible error in the court's admission of a portion of the State Board of Account's report. The State has urged on appeal that the report was hearsay, however, the State did not object to the report as being hearsay, and thus any error

predicated upon the admission of the report has not been properly preserved. Moreover, a persuasive argument could be made that even if the State had properly objected to the report, it was nonetheless admissible under the official records and documents exception to the hearsay rule.

Having found no reversible error, the judgment of the trial court is affirmed.

Lowdermilk and Lybrook, JJ., concur.