Mary **AIKENS**, Auditor of the State of Indiana; Jack New, Treasurer of the State of Indiana; Edison L. Thuma, Budget Director of the State of Indiana; Board of Trustees of the Public Employees Retirement Fund, Appellants (Defendants Below),

v.

Alice C. **ALEXANDER**, Ronald L. Wilson, for and on behalf of all members and beneficiaries of the Class of the Public Employees' Retirement Fund, Appellees (Plaintiffs Below).

No. 2–777A291.

Court of Appeals of Indiana, Fourth District.

Dec. 12, 1979.

Rehearing Denied Jan. 9, 1980.

Theodore L. Sendak, Atty. Gen., William G. Mundy, Deputy Atty. Gen., Indianapolis, for appellants.

Rex P. Killian, Paul G. Roland, Ruckelshaus, Bobbitt & O'Connor, J. Michael Sara, Indianapolis, for appellees.

YOUNG, Judge.

This is an appeal from the trial court's issuance of a mandatory injunction ordering the transfer of funds by public officials to the retirement fund of public employees and awarding attorney's fees.

The Public Employees Retirement Fund (PERF) is funded by contributions by the State and public employees to make up a pension for public employees upon their retirement. The employees contribute 3% of their gross salaries. The remainder of the fund consists of appropriation of monies by the General Assembly.

Within the fund there are three accounts: (1) the employers' active reserve account which consists of all monies paid into PERF by the State; (2) the employees' active re-

serve account which represents their salary contribution and (3) the pooled retirement account, into which is deposited, upon the retirement of any state employee, a sufficient sum of money, withdrawn from the employers' reserve account and added to the employee's contributions, to pay all retirement benefits for the remaining life of the employee according to actuarial principals. *See generally* IC 1976, 5–10–1–1 to –32, and 5–10–3–1 to –34.

The employees' membership in the plan and contribution to the fund is mandatory. The State's contribution is appropriated as a part of the general operating budget of the State. That appropriation enacted in March, 1967, for the 1967–69 biennium was $5,578,581.00 for the fiscal year 1968 (July 1967–June 1968) and $5,572,681.00 for the fiscal year 1969 (July 1968–June 1969). IC 1976, 4–13–2–18(f) provides that if the Budget Agency discovers that probable receipts will be less than anticipated, the amounts allotted may be reduced so as to prevent a deficit, upon notice to the agencies concerned and approval of the Governor. Also, in the general operating budget bill for that biennium the General Assembly included a section authorizing the State Budget Director to reduce the appropriations therein made if he should discover that probable receipts "will" be less than anticipated with the approval of the Governor and after notice to the agency involved. During the fiscal year 1967–68, the Budget Director reduced the appropriation for PERF from $5,578,581.00 to $1,715,646.00 and during the fiscal year 1968–69 reduced the appropriation from $5,572,681.00 to $2,250,000.00. Thus, the sums of $3,862,-935.00 and $3,322,681.00 reverted to the General Fund of the State.

The appellees brought suit in Mandamus to compel the payment of these sums to PERF, arguing that the reduced allotment was in violation of statutory funding requirements of PERF, and that the Budget Agency acted arbitrarily and capriciously. The trial court, upon special findings of fact and conclusions of law, decided in favor of the appellees and ordered the payment of these sums to PERF.

This appeal questions the propriety of the trial court's judgment in several respects. Due to our disposition of the first, however, we need not decide the remainder.

The appellants first challenge the trial court's conclusion that the plaintiffs-appellees had the requisite standing to maintain this suit. The appellees refer us to the area of trust law, as codified in the Trust Code, IC 1976, 30–4–1–1 et seq. (Burns Code ed.), for the applicable standard. However, IC 30–4–1–1(c) specifically excludes employee benefit trusts and trusts created or authorized by statute other than the Trust Code. We must look elsewhere for the applicable law.

In *State ex rel. State Board of Tax Commissioners v. Marion Superior Court* (1979), Ind., 392 N.E.2d 1161, the Indiana Supreme Court defined standing as "a restraint on the exercise of a court's jurisdiction in that the court has no authority to proceed with the cause of action or decide any issues in the case unless there is a demonstrable injury to the complaining party," citing *Board of Trustees of Town of New Haven v. City of Fort Wayne* (1978), Ind., 375 N.E.2d 1112. Clearly, a demonstrable injury presupposes a cognizable interest which has been adversely affected by the complained-of agency action. *See Medical Licensing Bd. v. Ind. St. Chiropractic Ass'n* (1978), Ind.App., 373 N.E.2d 1114.

The class of plaintiffs in this case consists of all public employees, active and retired, who are members of the Public Employee Retirement Fund. There is no question that upon retirement, a pensioner's interest is vested and assumes the attributes of a contract. *Etherton v. Wyatt* (1973), 155 Ind.App. 440, 293 N.E.2d 43, 51, quoting *Klamm v. State ex rel. Carlson* (1955), 235 Ind. 289, 126 N.E.2d 487, 489. Until that

time, however, "such pensions are gratuities . . . they involve no agreements of the parties and create no vested rights, notwithstanding compulsory contributions from the members' pay." *Id.* The most that could be argued in this case on behalf of employees not yet retired is that they do have an interest in their own contributions, since the Act requires that those contributions be returned with interest if the employees quit before retirement.

The trial court found that by reason of the Budget Agency's allotting less than the full legislative appropriation for PERF, the unfunded accrued liability was increased.[1]

The issue of standing requires that the Budget Agency's action had some adverse impact on the interests of the plaintiffs.

The trial court's order of judgment directs only that the money be transferred to PERF, without specifying which of the three funds. The evidence indicates that in fact it will be paid into the State's Active Reserve Account. Neither the employee contribution fund nor the pooled retirement fund were invaded as a result of the reduced allotment. The money would only be transferred to the pooled retirement fund according to the normal procedure followed when State employees retire. There is no indication how soon that might be.

The appellees argue that both active and retired employees have an interest in the investment income of the State's contributions. This is in fact not the case. The employee contributions are invested together as a distinct fund. The appellees refer us to the transcript of the certification hearing for the proposition that retired members share in excess investment income, however our review discloses the following explanation:

---

1. Actuaries can project, on the basis of statistics and certain actuarial "presumptions," how many active employees will meet the conditions for retirement, and how many persons in the future will enter the employ of the State and meet the conditions for retirement. Accrued liability in this context means that liability which would theoretically accrue if the State's contributions were made in the same manner as the employees. In fact, the State's

liability to any employee does not mature into a legally enforceable claim until that employee's actual retirement. The State's active reserve fund serves to insure that the State will meet its liability when it accrues. The difference between the theoretically and in-fact accrued liability, and the total assets of the Employers' Active Reserve Account and the Pooled Retirement Account, equals the unfunded accrued liability of the State.

Q.: I thought you said "Retirees can benefit from invested income"?

A: That is right. But only on those assets that are in that Reserve Account which are [sic] for the retired people.

. . . . .

So the seven million you are talking about will not be in that [pooled retirement account]. The seven million you're talking about will be in the State's Active Reserve Account and to that extent it certainly would provide more income. And that is the purpose, of course, of getting ahead, is to cut the cost.

Q.: That provides more income for whom?

A.: For the State.

Q.: For the State?

A.: Un-huh. In other words, make their cost less.

Clearly, the only pecuniary effect the transfer of this money will have on the plaintiffs-appellees is to reduce the possibility that at some future date there may be insufficient funds in the State's Active Reserve Account to keep the pooled retirement account fully funded. *Weaver v. Evans* (1972), 80 Wash.2d 461, 495 P.2d 639, upon which the appellees rely, is distinguishable from the present case in that this possibility had in fact occurred.

The appellees rely further on *Dombrowski v. Philadelphia* (1968), 431 Pa. 199, 245 A.2d 238, a case quite similar to the present one. There the plaintiff brought suit to compel the city-employer to make sufficient appropriations to maintain the retirement system on an actuarially sound basis as required by the city's Home Rule Charter. The court held that because the plaintiff had satisfied the conditions for retirement, he had a vested contractual interest which was sufficiently special to himself to confer standing. 245 A.2d at 245. The court reasoned further that "to hold that members of the retirement board have a sufficient beneficial interest to bring mandamus while members of the system do not is the equivalent of insisting that persons not having a vested right to benefits may sue but those having such a right

cannot." *Id.* In response to the appellant's argument that Dombrowski had not suffered any immediate injury, the court held that his contractual right to an actuarially sound retirement system was presently impaired by the city's present failure to perform that obligation. *Id.* at 247. The court properly noted that Dombrowski had standing to sue in spite of the contract relation, not because of it. *See State v. Trustees of Salem Church* (1888), 114 Ind. 389, 16 N.E. 808. However, the court drew elements from the contract relation to supply the requisite interest and injury of standing. We do not believe Indiana precedent allows a similar result in the present case. As demonstrated in *Cook v. Evansville* (1978), Ind.App., 381 N.E.2d 493, it is possible to be party to a contract which is breached without suffering that substantial injury which is necessary to confer standing.

Justice Cohen, dissenting from the majority opinion in *Dombrowski*, pointed out that in the prior decisions of that jurisdiction relied on by the majority, the plaintiff invariably alleged that money was due him personally. We observe the same phenomena in our own precedent. For example, in *Ingerman v. State* (1891), 128 Ind. 225, 27 N.E. 499, a contractor brought an action in mandamus to compel a Drainage Commissioner to pay for construction of a ditch according to their contract. The commissioner had collected the assessments levied to pay for the ditch but did not disburse the entire contract price to the contractor. The court agreed that mandamus does not lie to enforce a contract, but found the remedy appropriate under the circumstances:

The case is that of a ministerial officer with money in his hands which *it is his duty to pay to the party entitled to it under the law.* The fund in the appellant's hands was derived from an assessment made for a specific purpose; and the relator, as the contractor who constructed the ditch for which the assessments were levied, has a right to compel the appellant to distribute to him the fund, as the law directs. . . . In this instance there is no question of con-

tract liability. The question is as to the duty of the appellant to distribute to the relator the specific fund derived from the assessments levied to pay for the construction of the public ditch. The officer has no right to the specific fund; and he is liable, if at all, *because he violates his duty in withholding the specific fund from the party entitled to it.* He is not liable, upon the facts stated in the petition, to an action for a breach of contract duty; but he is liable, if liable at all, because he violated a duty imposed upon him by law. (Emphasis added).

27 N.E. at 499. In *Jesswein v. LaSalle State Bank* (1935), 101 Ind.App. 79, 198 N.E. 101, under similar facts, materialmen were not permitted to intervene notwithstanding that they alleged part of the fund was intended to reimburse them for materials furnished. The denial of their petition was upheld on the grounds that they alleged no statutory lien or interest in the money in question. In *Hilton v. Mason* (1883), 92 Ind. 157, a suit to enjoin the collection of a tax to aid in the construction of a railroad, the railroad company was held to have no interest in the money until collected and no standing to maintain a mandamus action to compel its payment. Indeed, in every case [2] to which the appellees refer us in support of the proposition that mandamus is proper to compel the performance of a duty on the part of a public officer to transfer money, suit was brought in the name of the person or board directly entitled to receive it. *See State v. Spinney* (1906), 166 Ind. 282, 76 N.E. 971; *Pfau v. State* (1897), 148 Ind. 539, 47 N.E. 927; *Henderson v. Bd. of Comm'rs of State Soldiers and Sailors Monument* (1891), 129 Ind. 92, 28 N.E. 127; *Carr v. State ex rel. Coetlosquet* (1891), 127 Ind. 204, 26 N.E. 778; *Rice v. State* (1884), 95 Ind. 33; *Wolfe v. State* (1883), 90 Ind. 16; *Hon v. State* (1883), 89 Ind. 249; *Gray, Governor v. State*

(1880), 72 Ind. 567; *Evans v. Browne* (1869), 30 Ind. 514; *Ristine v. State* (1863), 20 Ind. 328. See also *Klamm v. State* (1955), 235 Ind. 289, 126 N.E.2d 487; *Noble County Council v. State* (1955), 234 Ind. 172, 125 N.E.2d 709; *Blue v. State* (1936), 210 Ind. 486, 1 N.E.2d 122.

 Standing requires that the plaintiff must be actually injured by the challenged governmental action. In this regard it has been held analogous to Ind.Rules of Procedure, T.R. 17(A)(1), which requires that actions be prosecuted in the name of the real party in interest. *Bowen v. Metropolitan Board of Zoning Appeals in Marion County* (1974), 161 Ind.App. 522, 317 N.E.2d 193, 198 n. 3A. Real party in interest status requires that the plaintiff have a present and substantial interest in the relief sought; in other words, he must be entitled to the fruits of the action. *Cook v. Evansville*, 381 N.E.2d at 494. The abovementioned cases are consonant with this principle.

Justice Cohen, in *Dombrowski*, further distinguished Dombrowski's interest from that of the retirement board on the grounds that the board of trustees did not have standing as individuals but in their public capacity, being charged with the management of the retirement system. Again, this is in line with Indiana law. The trustees, authorized to receive all money belonging to PERF and responsible for its management, are entitled to the control of these funds. *Manor v. State* (1898), 149 Ind. 310, 49 N.E. 160. See *State ex rel. State Bd. of Tax Comm'rs v. Marion Superior Court, supra*. They would be acting on behalf of the retirement fund itself in endeavoring to procure, by mandate proceedings, payment of money to which the retirement fund is *presently entitled. Compare State v. Smith* (1949), 227 Ind. 599, 87 N.E.2d 813 (justice of the peace had standing to maintain action in mandamus to compel appropriation

2. In *Advisory Bd. of Wash. Twnshp. v. State* (1905), 164 Ind. 295, 73 N.E. 700, also cited by the appellees, the complaining parties were apparently the voters of the township. They sued to compel the Advisory Board to appropriate money to rebuild a school. Their right to a school in their district derived from the Indiana Constitution and statutory law. Further, Acts 1901, p. 159, c. 97 provided that no school could be abandoned without the written consent of the majority of the voters in that township.

and disbursement of funds to pay his clerk's salary because public officers or boards can bring mandamus for acts which are in the scope of their supervision or which are necessary for such officers or boards to perform their own duties).

Justice Cohen concluded his dissent, stating:

> The time for Dombrowski to complain is not now, but at such time when he is entitled and eligible to receive his pension and the City for some reason or another has failed to make payments in accordance with what the law requires. In *Geary v. Allegheny County Retirement Board*, 426 Pa. 254, 231 A.2d 743 (1967), Geary instituted an action in mandamus to compel the Board to grant his application for a retirement allowance, which he alleged he was presently eligible to receive. The Board defended on the basis that the statute which reduced the required age from sixty to fifty-five, was unconstitutional, since it changed the terms of the retirement contracts (discriminatory) and in addition reduced the certainty of payment to the members of the system. In other words, the Board in *Geary* alleged as a defense basically that which Dombrowski alleges in his complaint, namely, the system is presently actuarially unsound and that the City will not in the future be able to meet its commitments. Our Court, in issuing the writ of mandamus and refusing to consider the actuarial soundness of the system, reasoned that there must be some sort of concrete detriment to the employees rather than a conjectural, theoretical possibility that payments to them will not be met sometime in the future. While the court did not use the language standing to sue, the result reached impliedly leads to the conclusion that an employee would lack the requisite interest for challenging the actuarial soundness until a more concrete detriment existed, i. e., the actual failure of the City to meet its current obligations to him.

245 A.2d at 255. The majority had distinguished *Geary* on the grounds that Dombrowski did not allege a legislative alteration unconstitutionally impaired his contractual rights. We do not believe that this is a valid distinction in the present case. "Just as the legislature may not adversely affect the interests of a retirement plan member whose rights have vested upon retirement, the same is true of the Budget Agency when acting under the authority of powers delegated to it by the Legislature." *Etherton v. Wyatt*, 293 N.E.2d at 51. An increase in the theoretical possibility that payments might not be met in the future is no less speculative and conjectural because it results from agency action rather than legislative.

We are persuaded that Justice Cohen's conclusion is correct, and is applicable in the present case. Because the trial court's findings of fact do not indicate demonstrable injury to a present and substantial interest of the complaining parties, they do not support the trial court's conclusion that the plaintiffs had standing to maintain this action. Thus, the conclusion is clearly erroneous, Ind.Rules of Procedure, T.R. 52(A).

Because none of the complaining parties had standing to maintain this action, the trial court had no authority to decide any issues in the case. *State ex rel. State Bd. of Tax Comm'rs v. Marion Superior Court, supra.*

We reverse.

BUCHANAN, C. J. (sitting by designation), and CHIPMAN, J., concur.