## Clarke M. Fraser *v.* City of Norwich et al.

Brown, C. J., Jennings, Baldwin, Inglis and O'Sullivan, Js.

Argued April 11—decided June 27, 1950

*William J. Barrett*, for the appellant (plaintiff).

*Orrin Carashick*, for the appellees (defendants).

INGLIS, J. The assignments of error on this appeal question only the conclusions of the trial court. The gist of those conclusions is that the plaintiff is not entitled to recover the amounts by which his pay as a police officer was reduced by resolution of the common council of the city of Norwich in order to appropriate those amounts to the city's police benefit reserve fund.

In April, 1903, pursuant to the statutes then in effect, General Statutes, Rev. 1902, c. 124, the city of Norwich established a police reserve fund to provide money from which retired police officers could receive retirement pay. Between that date and 1920, sums were paid into the fund in accordance with the statute. In the summer of 1920, after revenue from the issuance of liquor licenses was cut off, it became apparent that the fund would soon be inadequate to meet the demands upon it. Accordingly, on August 2, 1920, the common council of the city adopted the following resolution: "Voted, That the resolution of the Court of Common Council, passed at its meeting on the 16th day of June, 1920, as amended by vote of the Court of Common Council at its meeting held on July 7, 1920, fixing the pay of members of the Police Department, be further amended by the following resolutions: Resolved, That from and after August 1, 1920, the Treasurer of the City of Norwich is authorized and directed to withhold each month from all compensation paid or due the

chief, captain, sergeants of police and to all ordinary and supernumerary policemen of the City two per centum of their pay. Resolved, That such pay so withheld shall be forthwith paid by the Treasurer to the reserve fund of the Police Department. The Treasurer shall include in his monthly report of the receipts, disbursements and balances, the amount of money paid to said fund from the source herein provided in addition to all other reports required of the Treasurer or Trustees of said fund."

In February, 1925, the plaintiff was first appointed a supernumerary policeman of the Norwich police department and served as such until July 1, 1935, when he was appointed a regular policeman. He served in the latter capacity until April 30, 1946, when he was dismissed from the department for cause. During all of the time of his service, 2 per cent of each payment of wages due him was withheld and paid into the police reserve fund in pursuance of the foregoing resolution.

On June 24, 1946, after his dismissal, the plaintiff, in a communication to the board of police commissioners of the city of Norwich, trustees of the fund, made the claim that he was entitled "to any part of the fund deducted from my wages while employed by the City of Norwich, plus accrued interest to date." The defendants, who, in addition to the city of Norwich, are the treasurer and trustees of the fund, refused the plaintiff's demand.

The section of the statutes which provided for the establishment and management of police department reserve funds in the various municipalities in the state, as it stood on August 2, 1920, was § 527, General Statutes, Rev. 1918. In so far as it has a bearing on this case, it is printed in the footnote.[1] Except for the fact

---

[1] RESERVE FUND OF POLICE DEPARTMENT; MANAGEMENT. There shall be in each city a fund to be known as the "reserve fund of the

that subdivision (2) was repealed in 1929 (Public Acts, 1929, c. 288), the section has remained the same ever since. General Statutes § 905.

The plaintiff's principal contention is that, inasmuch as the statute lists specifically the sources of revenue by which the reserve fund may be made up and does not include among them any provision for deductions from police officers' pay, it, by implication, prohibits such deductions for that purpose. The short answer to that is that such an implication of prohibition is not to be read into the statute. It is true that this statute, taken by itself, does not expressly authorize the building up of the fund by the withholding of any part of policemen's wages. It does, however, provide for building it up with "such moneys as shall from time to time be

police department," and said fund shall consist of: 1. All property specially devised or given for the benefit of disabled policemen, and all property given to the department on account of service rendered. 2. Five per centum of all fees or taxes collected on account of licenses to sell, or sales of, spirituous or intoxicating liquors within the limits of the town in which said city is located. 3. All lost, abandoned, unclaimed, or stolen money, in charge of the board of police commissioners or police committee of said city, and all moneys arising from the sale of unclaimed, abandoned, lost or stolen property, in charge of said board, available for the purpose by the laws of this state. 4. All rewards, fees, gifts, testimonials and emoluments, that may be presented to any member of the police force on account of special services, except such as shall be allowed by said board of police commissioners or police committee to be retained by said member, and all moneys collected from members of said police force by way of fines or forfeiture of pay imposed or ordered by said board, and all money deducted or withheld from the pay of members of said police force on account of lost time. 5. The income and interest from all property and moneys belonging to said fund. 6. Such moneys as shall from time to time be appropriated for that purpose by the common council of such city. . . . If said reserve fund shall be found at any time insufficient to meet all requirements upon it, the common council, upon application of said board of trustees, may make an appropriation to make good such deficiency, and any prospective deficiency in said funds may be provided for by said common council in its annual appropriation for the police department.

appropriated for that purpose by the common council of such city." It further specifies that "any prospective deficiency in said funds may be provided for by said common council in its annual appropriation for the police department." It does not restrict a city in its method of securing the money so to be appropriated. If, by virtue of some authority conferred by law, the city is empowered to raise a special fund to meet the appropriation which it makes to the reserve fund, there is nothing in this statute which prohibits it from exercising that power.

In the present case, the common council of the city of Norwich undertook to provide such a special fund by the resolution adopted on August 2, 1920. This resolution had two phases. In the first place, it provided for the withholding of 2 per cent of the pay of the members of the police department; in the second place, it directed that the amounts so withheld be paid over to the reserve fund. As regards the first phase, it is to be noted that the resolution in terms provided for the deduction as a part of the vote of the common council which fixed the pay of the members of the department. It was stated in the resolution itself that the provision for the deduction was by way of an amendment to a former resolution "fixing the pay of members of the Police Department." In essence, therefore, the resolution was that the pay of police officers should thenceforth be the pay fixed in the former resolution less 2 per cent thereof. So far as this first phase of the resolution is concerned, it was clearly a vote prescribing the pay of members of the police department. *Pennie* v. *Reis*, 132 U. S. 464, 470, 10 S. Ct. 149, 33 L. Ed. 426; *Hughes* v. *Traeger*, 264 Ill. 612, 616, 106 N. E. 431; *State ex rel. Risch* v. *Board of Trustees*, 121 Wis. 44, 49, 98 N. W. 954.

The amended charter of the city of Norwich in effect

in 1920 (18 Spec. Laws 120) provided, with reference to members of the police department, that they should "receive the pay prescribed by said court of common council." The same provision was continued in the further amendments of the charter adopted in 1941. 23 Spec. Laws 796. Accordingly, it was in effect during all the time the plaintiff was a member of the department. Under this provision, there can be no question that it was within the power of the common council in 1920 to reduce the pay of policemen. When it voted to do so by amending the earlier resolution prescribing that pay, it was acting pursuant to the authority vested in it by the charter of the city.

The second phase of the resolution merely amounted to the making of an appropriation to the reserve fund. That was within the power granted to the common council by the part of § 527 of the General Statutes, Rev. 1918, which authorized the common council of any city to make appropriations to provide against prospective deficiencies in the fund.

The plaintiff also points to the provisions of § 531, General Statutes, Rev. 1918 (Rev. 1949, § 908), relative to police benefit reserve funds, which reads as follows: "Each city shall have authority, by ordinance, to make regulations, not inconsistent herewith, for giving full effect to the provisions of this chapter." He contends that the vote of August 2, 1920, was invalid because it was merely a resolution and not an ordinance. As pointed out above, in so far as the resolution was operative to fix policemen's pay, it was not adopted pursuant to the authority of the chapter of the General Statutes referred to. For that reason the section just quoted did not control. See *Rule* v. *Stamford,* 121 Conn. 447, 450, 185 A. 178. The charter provision under which the resolution was adopted did not require that policemen's pay be set by ordinance. In so far as

the vote made an appropriation to the reserve fund, it was not a regulation for giving full effect to the provisions of the chapter. It was merely an appropriation. Moreover, if the portion of the vote which fixed the plaintiff's pay was valid, it would not have harmed him that the method adopted to make an appropriation to the reserve fund was not in proper form. The common council had full authority under the charter to fix the plaintiff's pay at a given amount less 2 per cent. The trial court was correct in its conclusion that the plaintiff could not recover the 2 per cent which had been withheld.

The greater part of the briefs of both parties is taken up with a discussion whether the Statute of Limitations had run against the plaintiff's claim, whether the plaintiff by accepting his diminished pay for many years had waived any rights he may have had to recover the amount withheld and whether he had lost any rights he might have had by laches. Inasmuch as the construction placed upon the statute decides the case, these additional issues need not be considered.

There is no error.

In this opinion BROWN, C. J., and JENNINGS, J., concurred.

O'SULLIVAN, J. (concurring). Although adopting a premise which seems to me to be untenable, my associates have reached a conclusion in which I concur. The premise upon which they rely is this: Where a city withholds a percentage of the money to which a police officer is entitled for services rendered and turns it over to a fund from which he may eventually draw benefits, his pay is the sum he receives after the deduction is made. Perhaps it may be stated more graphically in this fashion: While the plaintiff was employed by the city for, let us say, $200 a month, from which $4

was deducted monthly for the retirement fund, his pay was not $200 but $196. The very statement of the proposition exposes its weakness.

What the city actually did was to require each police officer to bolster the fund by his own contributions. The idea may have been all right, but to carry it out was unlawful. The authority of the city was circumscribed by General Statutes, Rev. 1918, § 527. None of the six sources by which the fund was to be maintained, either directly or by implication, authorized the city council to take the action it did. A municipality has only such power as the legislature grants to it. *Turney* v. *Bridgeport,* 55 Conn. 412, 414, 12 A. 520; *Keegan* v. *Thompson,* 103 Conn. 418, 421, 130 A. 707. In withholding 2 per cent of the pay of each police officer, the city pursued an unauthorized method and its action was contrary to law. *Kelly* v. *Bridgeport,* 111 Conn. 667, 673, 151 A. 268; *State ex rel. Coe* v. *Fyler,* 48 Conn. 145, 158; *Booth* v. *Woodbury,* 32 Conn. 118, 124.

It does not follow, however, that the plaintiff is entitled to recover. As a matter of law, he is estopped at this late day from raising the claim that the council's action was improper. He remained silent for over twenty years, although in that period of time 2 per cent of his pay was withheld on almost five hundred occasions. He knew that the purpose of these deductions was to replenish the fund, upon which, undoubtedly, he contemplated drawing when he reached the age of retirement. He was also aware that similar deductions were being made from the pay of his fellow officers. He never requested the city treasurer to cease the practice, nor in any other manner did he register a protest against it. Finally, he accepted the position in the department with the knowledge that deductions would be made from his pay and with anticipation of

the benefits which would flow from the fund to him upon honorable retirement. His unvaried conduct over a score of years now estops him from obtaining the return of what he willingly permitted to be withheld in the past. *Ives* v. *North Canaan,* 33 Conn. 402, 406.

In this opinion BALDWIN, J., concurred.