Karen **PINEMAN et al.,**
**Plaintiffs-Appellees,**

v.

**William G. OECHSLIN et al.,**
**Defendants-Appellants.**

**No. 376, Docket 80–7562.**

United States Court of Appeals,
Second Circuit.

Argued Nov. 17, 1980.

Decided March 16, 1981.

Peter W. Gillies, Deputy Atty. Gen., Hartford, Conn. (Carl R. Ajello, Atty. Gen., Bernard F. McGovern, Jr., Asst. Atty. Gen., and J. Sarah Posner, Asst. Atty. Gen., Hartford, Conn., on brief), for defendants-appellants.

Paul W. Orth, Hartford, Conn. (Austin Carey, Jr., Harry Franklin, Robert Krzys, Eleanor K. May and Hoppin, Carey & Powell, Hartford, Conn., on brief), for plaintiffs-appellees.

Robert F. McWeeny and Fleischmann, Sherbacow, McWeeny & Cohn, Hartford, Conn., submitted a brief for Connecticut State Federation of Teachers, AFT, AFL-CIO, as amicus curiae.

Before LUMBARD, NEWMAN, and KEARSE, Circuit Judges.

NEWMAN, Circuit Judge:

This appeal concerns the constitutionality of the State of Connecticut's revision of its State Employees Retirement Act, Conn. Gen.Stat. § 5–152 *et seq.*, to conform to the requirements of the federal civil rights laws. The District Court for the District of Connecticut (Jose A. Cabranes, Judge) struck down the revisions for impairing contractual obligations in violation of the Contract Clause of the United States Constitution.[1] *Pineman v. Oechslin*, 494 F.Supp. 525 (D.Conn.1980). We vacate and remand to allow the state courts an initial opportunity to decide the important question of state law at issue in this lawsuit.

Until 1974 a Connecticut state employee's eligibility for pension benefits varied according to gender: women with 25 years of service were eligible for retirement with full benefits at age 50, while men with the same length of service became eligible at age 55, Conn.Gen.Stat. § 5–162(c)(1) (amended 1975); for employees with 10 to 25 years of service, the eligibility age for retirement with full benefits was 55 for women and 60 for men, Conn.Gen.Stat. § 5–162(d)(1) (amended 1975). Similar five-year eligibility differences, based on gender, existed for reduced pension benefits, which were available under certain circumstances, Conn.Gen.Stat. §§ 5–163(c) and 5–166(a) (amended 1975), and the tables by which benefits were calculated ensured that a female retiree received benefits equal to those received by a male retiree five years her senior, Conn.Gen.Stat. § 5–162(d)(3) (amended 1975).

In 1974 these five-year retirement age differentials were found to discriminate against men in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq. (1976). *Fitzpatrick v. Bitzer*, 390 F.Supp. 278 (D.Conn.1974). In order to remedy that discrimination, the State legis-

---

1. The Clause provides: "No State shall ... pass any ... Law impairing the Obligation of Contracts ...." U.S.Const. art. I, § 10, cl. 1.

lature amended the retirement statute in 1975 to equalize the terms and benefits of the retirement system by raising the retirement eligibility ages for female employees so that they equaled the ages required for male employees. P.A. No. 75–531 (1975) ("the 1975 Act"). The 1975 Act established one retirement eligibility age for each category of eligible employee regardless of gender.[2]

Plaintiffs-appellees, who represent various classes of state employees, challenged the constitutionality of the 1975 Act under the Contract Clause for impairing the State's alleged contractual obligation to provide them with benefits at the retirement ages previously established.[3] By raising the ages, the State effectively reduced benefits for female employees. This reduction occurs either because the length of time benefits are received is shorter or the annual amount received is less. All women who wish to retire at the earliest possible age, set according to their length of service,

will find that this minimum eligibility age is now increased by five years. Most women who retire at the same age at which they would have retired under the prior system will find that their annual benefit level is reduced.[4] The District Court, on appellees' motion for summary judgment, held that the 1975 Act, as applied to appellees, violated the Contract Clause. The Court also noted that the Act's prospective application to employees who were not employed by the State on the Act's effective date (June 30, 1975) was not challenged and, in any event, would be constitutional.

In a thorough and carefully considered opinion, the District Court pursued traditional Contract Clause analysis, first considering whether a contractual obligation existed and, if so, whether the new statute was an unconstitutional impairment of that obligation. *Allied Structural Steel Co. v. Spannaus*, 438 U.S. 234, 98 S.Ct. 2716, 57 L.Ed.2d 727 (1978); *United States Trust Co. v. New Jersey*, 431 U.S. 1, 97 S.Ct. 1505, 52

2. The 1975 Act adopted the retirement ages formerly applicable only to male employees, as the new, uniform eligibility ages. Conn.Gen. Stat. §§ 5–162(c), 5–162(d), and 5–163(c) (1975). However, all employees, both male and female, who would reach the ages at which female employees were eligible to retire under the pre-1975 Act, within five years of the effective date of the 1975 Act, *i. e.*, by June 30, 1980, were eligible to retire at those lower ages. Conn.Gen.Stat. § 5–163a (1975).

3. Appellees also challenged the 1975 amendments to the State Employees Retirement Act under the Due Process and Equal Protection Clauses of the Fourteenth Amendment. They alleged that the amendments constituted a taking of property—their contract rights to pension benefits—without just compensation, and an arbitrary and irrational classification of employees—one according to birthdate—because employees who would reach the former, lower retirement age within five years of the enactment of the amendments, by June 30, 1980, were exempted from the higher retirement eligibility ages established by the amendments. Because the District Court found that the 1975 amendments violated the Contract Clause, it did not reach the merits of these claims. *Pineman v. Oechslin*, 494 F.Supp. 525, 536 n.26 (D.Conn.1980).

4. Benefits under the plan for those retiring with less than 25 years of service are determined by a fixed percentage of the employee's earnings, which increases according to the employee's age at retirement. For example, a female employee with more than 10 years of service, who retired at age 65 under the pre-1975 Act (although she could have retired at 55), would have received annual benefits equal to the sum of 1.25% of her social security earnings and 2.5% of her earnings in excess of the amount on which the State made social security contributions, both multiplied by her years of service. Conn.Gen.Stat. § 5–162(d)(3) (amended 1975). But under the present benefit schedule, if she retired at that same age, she would receive annual benefits equal to the sum of 1% of her social security earnings and 2% of her excess earnings, both multiplied by her years of service. Conn.Gen.Stat. § 5–162(d)(3) (1975). To obtain the same benefits available under the prior law she must now work five years longer and retire at age 70. Only those female employees who would have retired at age 70 or over, and do so under the 1975 Act, receive the same benefits as they would have received under the pre-1975 Act.

L.Ed.2d 92 (1977); *see* Note, *A Process-Oriented Approach to the Contract Clause*, 89 Yale L.J. 1623 (1980). Although no Connecticut court had ever ruled on the issue of when, or to what extent, the pension rights of state employees vest, the District Court found, from a combination of factors, that the Retirement Act, as it existed prior to the 1975 revision, created a contractual obligation. The Court emphasized state court decisions concerning the contractual nature of *private* -employer pension plans, *Bird v. Connecticut Power Co.*, 144 Conn. 456, 133 A.2d 894 (1957); *Borden v. Skinner Chuck Co.*, 21 Conn.Sup. 184, 150 A.2d 607 (Super. Ct.1958), and *Wyper v. Providence Washington Insurance Co.*, 533 F.2d 57 (2d Cir. 1976) (construing Connecticut law); the statutory requirement that state employees participate in, and contribute to, one of the state retirement plans, Conn.Gen.Stat. §§ 5–157, 5–160 and 5–161 (1975); and the reliance interest of female employees who had entered state service before the enactment of the 1975 Act, expecting to retire at the lower ages and receive the established benefit levels. Having found an enforceable state law obligation, the District Court then concluded that the 1975 revision violated the Contract Clause because it was neither necessary nor reasonable.

■ In reviewing the District Court's conclusions,[5] we focus our attention on the initial question whether the pre-1975 Retirement Act created a contractual obligation obliging Connecticut to maintain the pre-1975 retirement ages for female state employees who had not yet begun receiving retirement benefits when the Act was revised. This is an issue of both state and federal law. Initially it is a question of

state law, for only those arrangements enforceable as contractual obligations under state law are protected by the Contract Clause against impairment. At the same time, there is a federal law component to the inquiry. Federal courts must have the ultimate authority to determine, as a matter of constitutional law, whether a particular arrangement, of the sort normally enforceable as a contract under state law, is a contract protected by the Contract Clause; otherwise, states could always evade the restraint of the Clause by determining, through legislation or adjudication, that an arrangement previously regarded as a contract was no longer enforceable. For this reason the Supreme Court has frequently instructed that federal courts must independently determine the existence of a contract and the nature and extent of its obligations in order to decide whether it enjoys the protection of the Contract Clause. *E. g., Irving Trust Co. v. Day*, 314 U.S. 556, 561, 62 S.Ct. 398, 401, 86 L.Ed. 452 (1942). This federal law aspect of a Contract Clause case is often the dominant inquiry, because, at least in modern cases, the state law status of a contract is rarely in dispute. *See Allied Structural Steel Co. v. Spannaus, supra; United States Trust Co. v. New Jersey, supra; Veix v. Sixth Ward Building & Loan Association*, 310 U.S. 32, 60 S.Ct. 792, 84 L.Ed. 1061 (1940); *Home Building & Loan Association v. Blaisdell*, 290 U.S. 398, 54 S.Ct. 231, 78 L.Ed. 413 (1934). In this case, however, there is considerable uncertainty as to the state law nature of contingent pension benefits for public employees.

No Connecticut court has yet ruled on the precise question whether state employees have vested pension rights prior to becoming eligible to receive benefits. The states

---

**5.** The State argues on appeal that the District Court lacked subject matter jurisdiction on the grounds that 42 U.S.C. § 1983 and 28 U.S.C. § 1343(3) confer jurisdiction only upon claims based on the Fourteenth Amendment or incorporated through it. We disagree and construe § 1343(3) to confer jurisdiction to decide *all* constitutional claims. *Cf. Maine v. Thiboutot*,

—— U.S. ——, 100 S.Ct. 2502, 65 L.Ed.2d 555 (1980) (§ 1983 encompasses claims based on *all* laws); *Anglo-American Provision Co. v. Davis Provision Co.*, 105 F. 536 (S.D.N.Y.1900) (predecessor statutes to §§ 1983 and 1343(3), Rev.Stat. §§ 1977, 1979, and 629, confer jurisdiction on claim under Full Faith and Credit Clause).

that have considered the question have adopted a variety of approaches. Some states hold that there are no rights under a pension plan until the state employee satisfies all the eligibility requirements, including age and years of service, for receiving benefits. *See, e. g., Etherton v. Wyatt*, 155 Ind.App. 440, 293 N.E.2d 43 (Ct.App.1973); *McFeely v. Pension Comm'n*, 8 N.J.Super. 575, 73 A.2d 757 (Law Div.1950); *Creps v. Board of Firemen's Relief & Retirement Fund Trustees*, 456 S.W.2d 434 (Tex.Civ. App.1970). Others hold that pension rights vest unconditionally upon employment. *See, e. g., Yeazell v. Copins*, 98 Ariz. 109, 402 P.2d 541 (1965); N.Y.Const. art. V, § 7. Still others apply a limited vesting concept, holding that pension rights vest upon employment subject to "reasonable" modification by the public employer. *See, e. g., Stork v. State*, 62 Cal.App.3d 465, 133 Cal. Rptr. 207 (1976); *Police Pension Relief Bd. v. Bills*, 148 Colo. 383, 366 P.2d 581 (1961); *City of Frederick v. Quinn*, 35 Md.App. 626, 371 A.2d 724 (Ct.Spec.App.1977). And some determine vesting rights according to the nature of the employee's contributions: voluntary plans vest upon employment, but mandatory plans do not vest. *See, e. g., State ex rel. O'Donald v. City of Jacksonville Beach*, 142 So.2d 349 (Fla.Dist.Ct.App. 1962), aff'd, 151 So.2d 430 (1963). *Cf. United States Railroad Retirement Bd. v. Fritz*, —— U.S. ——, 101 S.Ct. 453, 66 L.Ed.2d 368 (1980) (railroad retirement benefits, established by federal law, are not contractual); *Flemming v. Nestor*, 363 U.S. 603, 610–11, 80 S.Ct. 1367, 1372, 4 L.Ed.2d 1435 (1960) (social security benefits are not contractual; Congress's reservation of right to alter, amend, or repeal the system simply makes express what is implicit in the institutional needs of the program).

In the absence of any authoritative ruling by the courts of Connecticut on the vesting of state employee pension rights, both sides in this case have relied on a small number of Connecticut decisions on somewhat related questions of pension law. *Bird v. Connecticut Power Co., supra; Borden v. Skinner Chuck Co., supra; Fraser v. City of Norwich*, 137 Conn. 43, 75 A.2d 60 (1950); *State ex rel. Herbert v. Ryan*, 16 Conn.Sup. 319 (Super.Ct.1949). The District Court, analogizing from a decision in the field of private pensions, *Bird v. Connecticut Power Co., supra*, predicted that Connecticut courts would recognize contractual rights to public pensions arising immediately upon entry into state employment. We are not prepared either to accept or to reject that prediction. In our view abstention is appropriate to afford the state courts an opportunity to adjudicate the contract law aspect of appellees' claim, even though the federal courts, thereafter resolving the constitutional issue, will not be obliged to give the state court ruling the conclusive deference that abstention normally entails. *See Atlantic Coast Line Railroad Co. v. Phillips*, 332 U.S. 168, 170, 67 S.Ct. 1584, 1585, 91 L.Ed. 1977 (1947); *Irving Trust Co. v. Day, supra*, 314 U.S. at 561, 62 S.Ct. at 401; *Higginbotham v. City of Baton Rouge*, 306 U.S. 535, 538–39, 59 S.Ct. 705, 706, 83 L.Ed. 968 (1939).

Despite the lack of the usual conclusiveness of a state court determination of state law, abstention principles are fully applicable in this case. The issues in this lawsuit combine significant aspects of both the *Pullman*[6] and *Burford*[7] branches of the abstention doctrine. The state common law rule[8] governing the vesting of public em-

---

6. *Railroad Commission v. Pullman*, 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1941).

7. *Burford v. Sun Oil Co.*, 319 U.S. 315, 63 S.Ct. 1098, 87 L.Ed. 1424 (1943).

8. The principles of abstention apply to cases involving unsettled issues of state common law

just as to more typical cases involving a state statute. *Cf.* H. Hart & H. Wechsler, *The Federal Courts and the Federal System* 992 (2d ed. 1973). One court suggested that a federal court, exercising federal question jurisdiction, should not abstain from deciding a common law issue, although it also found that the state

ployee pension rights is highly uncertain. The subject matter, the fixing of compensation benefits to state employees, is of vital importance to the State and its governmental functioning. *See National League of Cities v. Usery*, 426 U.S. 833, 96 S.Ct. 2465, 49 L.Ed.2d 245 (1976). State autonomy and the relationship between state and federal authority would be impaired were the federal courts to set state policy independently and follow their own instincts as to state contract law. Considerations of comity that underlie our federal system of government make abstention appropriate. *See Burford v. Sun Oil Co.*, 319 U.S. 315, 332, 334, 63 S.Ct. 1098, 1106, 1107, 87 L.Ed. 1424 (1943); *Railroad Commission v. Pullman*, 312 U.S. 496, 498, 501, 61 S.Ct. 643, 645, 85 L.Ed. 971 (1941).

The District Court's judgment with respect to the invalidity of the 1975 Act, as applied to persons employed before June 30, 1975, is vacated and remanded for further proceedings in accordance with this opinion.[9] No costs.

---

common law at issue was not uncertain. *Moreno v. University of Maryland*, 420 F.Supp. 541, 553 (D.Md.1976), *aff'd without opinion*, 556 F.2d 573 (4th Cir. 1977), *question certified sub nom. Elkins v. Moreno*, 435 U.S. 647, 98 S.Ct. 1338, 55 L.Ed.2d 614 (1978). However, the Supreme Court, in reviewing that decision, certified the state common law question to the Maryland Court of Appeals because the question was "potentially dispositive" of the constitutional question and no controlling precedents existed; because of the importance of the subject matter (who can become a domiciliary of the state) to state government, the Supreme Court did not defer to the District Court's determination of state law. *Elkins v. Moreno*, *supra*, 435 U.S. at 662, 98 S.Ct. at 1347. And, as the Court had previously explained in *Bellotti v. Baird*, 428 U.S. 132, 151, 96 S.Ct. 2857, 2868, 49 L.Ed.2d 844 (1976), remanding a case for certification of a state law question does not mean that abstention would have been improper if certification had not been available.

9. Following the procedure established in *England v. Louisiana State Board of Medical Examiners*, 375 U.S. 411, 84 S.Ct. 461, 11 L.Ed.2d 440 (1964), the District Court is to retain jurisdiction pending state court determination of the state law question. If the Connecticut courts adopt the District Court's view of Connecticut

contract law, that state employees acquire pension rights unconditionally upon employment, then the District Court may enter a fresh judgment embodying its view of the constitutionality of the retirement age revisions, in which event an appeal may be taken to this Court. If the state courts reject initial vesting of state employee pension rights, then, should the appellees return to District Court, that Court will have to consider the contract issue independently, enlightened by the reasoning of the state courts.

In seeking a state court declaration concerning the contract law issue, appellees will have to consider whether to follow the *England* option of reserving the federal issue so that they may return to District Court, or whether they prefer to submit all issues to the state courts. If federal issues are reserved, we see no reason why the state courts, if they should decide as a matter of state law that pension rights vest subject only to "reasonable" modification, could not also rule, as a matter of state law, whether the revisions of the 1975 Act are reasonable, having due regard to their nature and origin. Such a state law ruling, if the state courts choose to make it, would be instructive for the federal courts, though not conclusive. We intimate no views on any aspect of the merits.