18-3193-cv
*Donohue v. The State of New York*

# UNITED STATES COURT OF APPEALS
### FOR THE SECOND CIRCUIT

———————

August Term, 2021

Last Submission: March 30, 2022      Decided: April 27, 2022

Docket No. 18-3193-cv

———————

DANNY DONOHUE, AS PRESIDENT OF THE CIVIL SERVICE EMPLOYEES ASSOCIATION, INC., LOCAL 1000, AFSCME, AFL-CIO, CIVIL SERVICE EMPLOYEES ASSOCIATION, INC., LOCAL 1000, AFSCME, AFL-CIO, MILO BARLOW, ON BEHALF OF HIMSELF, ON BEHALF OF RETIREES OF THE STATE OF NEW YORK FORMERLY IN THE CSEA BARGAINING UNITS, THOMAS JEFFERSON, ON BEHALF OF HIMSELF, ON BEHALF OF RETIREES OF THE STATE OF NEW YORK FORMERLY IN THE CSEA BARGAINING UNITS, CORNELIUS KENNEDY, ON BEHALF OF HIMSELF, ON BEHALF OF RETIREES OF THE STATE OF NEW YORK FORMERLY IN THE CSEA BARGAINING UNITS, JUDY RICHARDS, ON BEHALF OF HERSELF, ON BEHALF OF RETIREES OF THE STATE OF NEW YORK FORMERLY IN THE CSEA BARGAINING UNITS, HENRY WAGONER, ON BEHALF OF HIMSELF, ON BEHALF OF RETIREES OF THE STATE OF NEW YORK FORMERLY IN THE CSEA BARGAINING UNITS,

*Plaintiffs-Appellants,*

— v. —

KATHLEEN C. HOCHUL, IN HER OFFICIAL CAPACITY AS GOVERNOR OF THE STATE OF NEW YORK, PATRICIA A. HITE, INDIVIDUALLY, REBECCA A. CORSO, IN HER OFFICIAL CAPACITY AS ACTING COMMISSIONER, NEW YORK STATE CIVIL SERVICE DEPARTMENT, CAROLINE W. AHL, IN HER OFFICIAL CAPACITY AS COMMISSIONER OF THE NEW YORK STATE CIVIL SERVICE COMMISSION, LANI V. JONES, IN HER OFFICIAL CAPACITY AS COMMISSIONER OF THE NEW YORK STATE CIVIL SERVICE COMMISSION,

ROBERT L. MEGNA, INDIVIDUALLY, ROBERT F. MUJICA, JR., IN HIS OFFICIAL CAPACITY AS DIRECTOR OF THE NEW YORK STATE DIVISION OF THE BUDGET, THOMAS P. DINAPOLI, IN HIS OFFICIAL CAPACITY AS COMPTROLLER OF THE STATE OF NEW YORK, JANET M. DIFIORE, IN HER OFFICIAL CAPACITY AS CHIEF JUDGE OF THE NEW YORK STATE UNIFIED COURT SYSTEM,

*Defendants-Appellees,*

THE STATE OF NEW YORK, NEW YORK STATE CIVIL SERVICE DEPARTMENT, NEW YORK STATE AND LOCAL RETIREMENT SYSTEM, NEW YORK STATE UNIFIED COURT SYSTEM,

*Defendants.*

———————————————

B e f o r e :

NEWMAN and LYNCH, *Circuit Judges.*[*]

———————————————

Plaintiffs-Appellants the Civil Service Employees Association ("CSEA") and officers and retired former members of CSEA (collectively, "the CSEA Plaintiffs") challenge the State of New York's 2011 reduction, through the amendment of a state statute and regulation, of its contributions to retired former State employees' health insurance premiums. The CSEA Plaintiffs contend that the reduced contributions contravene the State's contractual obligation, under CSEA's collective-bargaining agreements ("CBAs") with the State, to pay a fixed percentage of retirees' health insurance premiums throughout their retirements. They bring claims for breach of contract under New York law and for impairing

---

[*] Judge Peter W. Hall, originally a member of the panel, died on March 11, 2021. The two remaining members of the panel, who are in agreement, have decided this case. *See* 28 U.S.C. § 46(d); 2d Cir. IOP E(b); *United States v. Desimone*, 140 F.3d 457, 458-59 (2d Cir. 1998).

contractual obligations in violation of the Contract Clause of the United States Constitution. The United States District Court for the Northern District of New York granted summary judgment to Defendants-Appellees on both claims. On appeal, we certified two questions to the New York Court of Appeals, including whether the CBA provisions that the CSEA Plaintiffs cite, though silent on the question of lifetime vesting, give rise to an inference of such vesting, or are at least ambiguous concerning that issue. The New York Court of Appeals answered the first part of that question in the negative and declined to resolve the second. With the benefit of the answer to our certified questions, we now conclude that the State's adjustment of contribution rates for retirees neither breached any of the contractual provisions that the CSEA Plaintiffs identify nor impaired any constitutionally protected contractual obligations. We therefore **AFFIRM** the judgment of the district court.

---

ERIC E. WILKE, Civil Service Employees Association, Inc., Albany, NY (Daren J. Rylewicz, Jennifer C. Zegarelli, *on the brief*), *for Plaintiffs-Appellants.*

FREDERICK A. BRODIE, Assistant Solicitor General, Albany, NY (Letitia James, Attorney General, State of New York, Barbara D. Underwood, Solicitor General, Andrea Oser, Deputy Solicitor General, *on the brief*), *for Defendants-Appellees.*

Robert T. O'Reilly, New York State United Teachers, New York, NY, *for Amicus Curiae United University Professions.*

---

GERARD E. LYNCH, *Circuit Judge*:

Plaintiffs-Appellants the Civil Service Employees Association ("CSEA") and certain of its officers and retired former members (collectively, "the CSEA

3

Plaintiffs") brought this action against various New York State officials (collectively, "the State"), asserting claims for breach of contract and unconstitutional impairment of contractual obligations, based on the State's 2011 decision to reduce its contributions to certain retired former employees' health insurance premiums. Although the relevant collective bargaining agreements ("CBAs") did not expressly provide for a vested lifetime right to a particular contribution rate, the CSEA Plaintiffs argued that various provisions of the CBAs gave rise to such a right by inference. The United States District Court for the Northern District of New York (Mae A. D'Agostino, *J.*) granted summary judgment to the State on the contract and constitutional claims. *See Donohue v. New York* ("*Donohue I*"), 347 F. Supp. 3d 110 (N.D.N.Y. 2018).

On appeal, we determined that both claims "depend on aspects of New York law on which the State's courts have not conclusively ruled and that meet our other criteria for certification." *Donohue v. Cuomo* ("*Donohue II*"), 980 F.3d 53, 59 (2d Cir. 2020). Accordingly, we certified two questions to the New York Court of Appeals: (1) whether, under New York law, the CBA provisions that the CSEA Plaintiffs cite grant retirees a vested lifetime right to fixed contribution rates, or at

least are ambiguous on that issue; and (2) if such a vested right exists, whether New York law affords the CSEA Plaintiffs a remedy in contract. *Id.* at 87.

The New York Court of Appeals accepted certification, 36 N.Y.3d 935 (2020), and answered the first part of our first certified question, holding that "New York's contract law does not recognize . . . inferences" of vested lifetime rights to retiree benefits from silence and that "[a]bsent such inferences, none of the CBA provisions identified [in our first certified question] establish a vested right to lifetime fixed premium contributions, either singly or in combination," *Donohue v. Cuomo* ("*Donohue III*"), 38 N.Y.3d 1, 19 (2022). The Court of Appeals declined, however, "to determine whether the CBA's text is ambiguous." *Id.*

With the benefit of the New York Court of Appeals's guidance, we now conclude that the district court did not err in granting summary judgment to the State on both claims. The New York Court of Appeals held as a matter of state law that the CBA provisions at issue cannot unambiguously establish a vested lifetime right to fixed premium contributions, so the breach of contract claim cannot succeed without the consideration of extrinsic evidence. Looking to the certification opinion and applying established principles of New York law, we hold that those provisions are not ambiguous regarding the establishment of

such a vested right, and therefore consideration of extrinsic evidence is not permissible. To the extent that our Contract Clause analysis requires us to make an independent determination of whether constitutionally protected contractual obligations were impaired, we hold that no such obligations are at stake. We therefore AFFIRM the judgment of the district court.[1]

**BACKGROUND**

This appeal grows out of a dispute over the State's decision in 2011 to reduce its premium contributions under the New York State Health Insurance Plan ("NHYSHIP"), an optional health-benefit plan for active and retired State employees. From the program's inception in 1956 until 1983, the State, pursuant to a state statute, paid 100% of active and retired participants' NYSHIP premiums and 75% of their dependents' premiums. In 1982, the State negotiated with CSEA and other public-sector unions a reduction of the State's individual-coverage

---

[1] This Opinion disposes only of the above-captioned appeal. We reserve decision in the ten related cases – Nos. 18-3049-cv, 18-3066-cv, 18-3122-cv, 18-3140-cv, 18-3142-cv, 18-3151-cv, 18-3172-cv, 18-3183-cv, 18-3220-cv, and 18-3221-cv – because those cases involve different CBAs which may include materially different language. We will afford the parties in those cases an opportunity for further briefing focused on any relevant differences in those CBAs or other circumstances that may distinguish them from this case in light of the principles applied in *Donohue II*, *Donohue III*, and this Opinion.

contribution rate from 100% to 90%, effective January 1, 1983. The 90% and 75%

rates remained in effect from 1983 to 2011, during which period CSEA and the

State negotiated seven more CBAs.

In 2011, in an effort to address budget shortfalls due to the Great Recession,

the State negotiated with CSEA and other public-sector unions to reduce the

State's contribution rates to 88% for individual coverage and 73% for dependent

coverage for certain grades of employees, and 84% for individual coverage and

69% for dependent coverage for others. Thereafter, the State legislature amended

N.Y. Civ. Serv. Law § 167 to provide that, "[n]otwithstanding any inconsistent

provision of law, where and to the extent that a [CBA] so provides, the state cost

of premium or subscription for eligible employees covered by such agreement

may be modified pursuant to the terms of such agreement," and to authorize the

President of the Civil Service Commission, "with the approval of the director of

the budget, [to] extend the modified state cost of premium or subscription

charges for employees or retirees not subject to [a CBA] and [to] promulgate the

necessary rules or regulations to implement this provision." *Id.* § 167(8). Pursuant

to that authorization, the Acting Commissioner of the State Civil Service

Department – who is also the President of the Civil Service Commission –

7

received the necessary approval and promulgated a regulation extending the 88% and 73% contribution rates negotiated for current employees to retirees. *See* N.Y. Comp. Code R. & Regs. tit. 4, § 73.3(b).

Various groups of retired former State employees, unions representing them, and those unions' officers then filed eleven separate actions challenging the contribution reductions in United States District Court. The CSEA Plaintiffs filed this action on December 28, 2011, and the district court designated it as the lead case. The State moved for summary judgment in all eleven cases, and the CSEA Plaintiffs cross-moved for summary judgment in this case. The district court granted the State's summary judgment motions in all eleven cases and denied the CSEA Plaintiffs' cross-motion, concluding, *inter alia*, that the CBA provisions at issue unambiguously did not provide any vested right to a continuing contribution rate for retirees. *See Donohue I*, 347 F. Supp. 3d at 129-31. All eleven sets of plaintiffs timely appealed. Like the district court, we designated the present case as the lead case, and we ordered that the various sets of plaintiffs coordinate their argument.

In *Donohue II*, we determined that this case turned on unresolved questions of New York law. We were unable to confidently predict whether the New York

8

Court of Appeals would adopt the Supreme Court's holding in *M & G Polymers USA, LLC v. Tackett*, 574 U.S. 427 (2015), that courts interpreting CBAs governed by federal law may not infer lifetime vesting of retiree benefits from silence as to the duration of such benefits, and the Supreme Court's holding in *CNH Indus. N.V. v. Reese*, 138 S. Ct. 761 (2018), that such silence does not create ambiguity concerning that issue.[2] *Donohue II*, 980 F.3d at 68-72.

Prior to *Tackett* and *Reese*, some federal courts had drawn such inferences in interpreting CBAs governed by federal law, following the Sixth Circuit's lead in the now-abrogated case of *International Union, United Auto., Aerospace, & Agric. Implement Workers of America (UAW) v. Yard-Man, Inc.*, 716 F.2d 1476 (6th Cir. 1983). In *Kolbe v. Tibbetts*, 22 N.Y.3d 344 (2013), the New York Court of Appeals held that a CBA that granted retirees a vested right to the "same coverage" until age 70 was ambiguous as to the "scope" of that coverage, but it declined "to rule on whether New York applies an inference of vesting for retiree health insurance rights," *id.* at 354, leaving an open question of state contract law that was critical

---

[2] Because state employees are not covered by the National Labor Relations Act, *see* 29 U.S.C. § 152(2), their collective bargaining rights, if any, derive from state law, and when states create such rights (as New York has, *see* N.Y. Civ. Serv. Law § 203), the interpretation of any resulting CBAs is governed by state law.

to this case. Furthermore, we were unable to predict whether, assuming that the CSEA Plaintiffs had a constitutionally protected contractual right to fixed contribution rates, the New York Court of Appeals would hold that they could obtain relief under state law for breach of contract. The answer to that question is critical to determining whether, if such vested rights were provided by the CBA, New York's failure to comply with the contracts was a mere breach, remediable under state law, or an unconstitutional impairment of contractual obligations. *Donohue II*, 980 F.3d at 80-81. Accordingly, after determining that both issues met our criteria for certification, *see id.* at 84, we certified the following questions to the New York Court of Appeals:

> **Question 1:**
>
> Under New York state law, and in light of *Kolbe v. Tibbetts*, 22 N.Y.3d 344, 980 N.Y.S.2d 903, 3 N.E.3d 1151 (2013), *M & G Polymers USA, LLC v. Tackett*, 574 U.S. 427, 135 S.Ct. 926, 190 L.Ed.2d 809 (2015), and *CNH Indus. N.V. v. Reese*, —— U.S. ——, 138 S. Ct. 761, 200 L.Ed.2d 1 (2018), do §§ 9.13 (setting forth contribution rates of 90% and 75%), 9.23(a) (concerning contribution rates for surviving dependents of deceased retirees), 9.24(a) (specifying that retirees may retain NYSHIP coverage in retirement), 9.24(b) (permitting retirees to use sick-leave credit to defray premium costs), and 9.25 (allowing for the indefinite delay or suspension of coverage or sick-leave credits) of the 2007-2011 collective bargaining

10

agreement between the Civil Service Employees Association, Inc. and the Executive Branch of the State of New York ("the CBA"), singly or in combination, (1) create a vested right in retired employees to have the State's rates of contribution to health-insurance premiums remain unchanged during their lifetimes, notwithstanding the duration of the CBA, or (2) if they do not, create sufficient ambiguity on that issue to permit the consideration of extrinsic evidence as to whether they create such a vested right?

**Question 2**

If the CBA, on its face, or as interpreted at trial upon consideration of extrinsic evidence, creates a vested right in retired employees to have the State's rates of contribution to health-insurance premiums remain unchanged during their lives, notwithstanding the duration of the CBA, does New York's statutory and regulatory reduction of its contribution rates for retirees' premiums negate such a vested right so as to preclude a remedy under state law for breach of contract?

*Donohue II*, 980 F.3d at 87-88.

In *Donohue III*, the New York Court of Appeals answered our first certified question in part. "Settling the question left open in *Kolbe*," the court "decline[d] to adopt any *Yard-Man*-type inferences, either in favor of vested rights or in favor of determining that ambiguity exists concerning that issue." 38 N.Y.3d at 17-18. Accordingly, the court held that "none of the CBA provisions identified by the

11

Second Circuit in the first certified question establish a vested right to lifetime fixed premium contributions, either singly or in combination." *Id.* at 19. It declined, however, to answer the second part of our first certified question, finding "no occasion to determine whether the CBA's text is ambiguous." *Id.*

Following the answer of the New York Court of Appeals to our certified questions, we ordered the parties to file supplemental letter-briefs addressing the effect of that answer on the proper disposition of this appeal. We also granted the request of the United University Professions ("UUP"), a plaintiff in one of the related cases, to file a supplemental letter-brief as *amicus curiae*.

## DISCUSSION

The CSEA Plaintiffs contend that each of the CBAs between CSEA and the State in effect between 1982 and 2011 gave retirees a lifetime vested right to retain NYSHIP coverage with the State contributing 90% of the cost of individual coverage and 75% of the cost of dependent coverage, and that the State either breached or unconstitutionally impaired the CBAs by unilaterally reducing those rates to 88% and 73%, respectively. They assert that five CBA provisions, read together, establish such a right, or at least create an ambiguity about its

12

existence.[3]

As we held in *Donohue II*, the CSEA Plaintiffs "cannot prevail" on either the breach of contract or Contract Clause claim "unless we interpret the CBAs to provide for a vested right to NYSHIP coverage at fixed contribution rates for retirees – either because they unambiguously so provide, or because they are ambiguous as to such a right and extrinsic evidence resolves that ambiguity in Plaintiffs' favor." *Donohue II*, 980 F.3d at 63. The New York Court of Appeals has now held as a matter of state law that the CBAs do not unambiguously provide such a right. Accordingly, the CSEA Plaintiffs now may prevail on their breach of contract claim only if the CBA provisions are ambiguous and extrinsic evidence resolves that ambiguity in their favor; and if not, they may prevail on their contract impairment claim only if, notwithstanding New York law's failure to recognize the right that they assert, that right is protected by the Contract Clause as a matter of federal constitutional law. We conclude that the CBA provisions unambiguously do not provide a vested lifetime right to continuous contribution rates for retirees under New York or federal law, and that the district court thus

---

[3] The five provisions in question are summarized in Certified Question 1 above. The full texts of all five provisions are set out in *Donohue II*, 980 F.3d at 72-73.

13

did not err in granting summary judgment to the State on both claims.

## I.   Standard of Review

"We review a district court's decision granting summary judgment *de novo*, and will affirm only if the record, viewed in the light most favorable to the non-movant, shows no genuine dispute of material fact and demonstrates the movant's entitlement to judgment as a matter of law." *FIH, LLC v. Found. Capital Partners LLC*, 920 F.3d 134, 140 (2d Cir. 2019) (internal quotation marks omitted). We also review issues of contractual interpretation *de novo*. *Id*.

## II.   Breach of Contract

In order to prevail on their New York breach of contract claim, the CSEA Plaintiffs must establish "(1) an agreement, (2) adequate performance [on their part], (3) breach by [the State], and (4) damages." *Fisher & Mandell, LLP v. Citibank, N.A.*, 632 F.3d 793, 799 (2d Cir. 2011). The first two elements are not in dispute. Our analysis thus begins with whether the State breached the CBAs by reducing the State's contribution rates. It ends there as well because, guided by the answers to our certified questions provided by the New York Court of Appeals, we conclude as a matter of New York law that the CBA provisions that the CSEA Plaintiffs cite unambiguously do not provide a vested lifetime right to

14

fixed contribution rates for retirees, and thus the reduction in contribution rates could not have breached the CBAs.

In response to our first certified question, the New York Court of Appeals held that "none of the CBA provisions [that the CSEA Plaintiffs cite] . . . establish a vested right to lifetime fixed premium contributions, either singly or in combination," *Donohue III*, 38 N.Y.3d at 19. It is clear from that holding that the provisions at issue do not *unambiguously* establish the vested right that the CSEA Plaintiffs assert. With the benefit of the answer to our first certification question, we now conclude that the CBA provisions at issue are not ambiguous as to lifetime vesting.

"Absent law from a state's highest court, a federal court sitting in diversity" or exercising supplemental jurisdiction over state-law claims "has to predict how the state court would resolve an ambiguity in state law." *Michalski v. Home Depot, Inc.*, 225 F.3d 113, 116 (2d Cir. 2000). Mindful of that role, we noted in *Donohue II* that the New York Court of Appeals had never taken a position on the Supreme Court's holdings in *Tackett* or *Reese* and that "two state appellate divisions ha[d] taken divergent approaches to applying" those holdings. 980 F.3d at 71. Specifically, the Second Department declined to draw an inference of

15

lifetime vesting from silence and also found no ambiguity in that silence, *see Village of Old Brookville v. Village of Muttontown*, 179 A.D.3d 972 (2d Dep't 2020), while the Third Department declined to draw an inference of lifetime vesting but found ambiguity in a contract's silence on that issue, *see Evans v. Deposit Cent. Sch. Dist.*, 183 A.D.3d 1081 (3d Dep't 2020). "While the courts in both *Old Brookville* and *Evans* purported to apply the central holding of *Tackett*, the Second Department in *Old Brookville* did so in a manner that was also consistent with *Reese*, whereas the Third Department in *Evans* did not." *Donohue II*, 980 F.3d at 72. In light of this divergent precedent, we could not predict whether, assuming that the New York Court of Appeals adopted *Tackett*, it would also adopt *Reese*.

In its answer to our certified questions, the New York Court of Appeals declined to consider whether the CBA provisions at issue were ambiguous, because it "believe[d] that [its] analysis answers the pivotal question that prompted [our] certification, and settles New York law that governs the first certified question." *Donohue III*, 38 N.Y.3d at 19. Since our first certified question included the sub-question of whether the CBA provisions were ambiguous, which would "permit the consideration of extrinsic evidence as to whether they create such a vested right," *Donohue II*, 980 F.3d at 87-88, it follows that the New

16

York Court of Appeals believed we would find the answer to that sub-question in its analysis.

We believe that the New York Court of Appeals effectively settled the issue when it "decline[d] to adopt any *Yard-Man*-type inferences, either in favor of vested rights or in favor of determining that ambiguity exists concerning that issue." *Donohue III*, 38 N.Y.3d at 17-18. The portion of that statement concerning ambiguity appears to endorse the Supreme Court's holding in *Reese* that courts should not read contractual language that is silent on the issue of lifetime vesting of insurance benefits for retirees to create ambiguity as to that issue – precisely what the CSEA Plaintiffs ask us to do here. Moreover, in the course of its analysis, the New York Court of Appeals recited an established principle of New York contract law that counsels against inferring ambiguity from silence:

> A contract's silence on an issue does not "create an ambiguity which opens the door to the admissibility of extrinsic evidence to determine the intent of the parties." More to the point, "an ambiguity never arises out of what was not written at all, but only out of what was written so blindly and imperfectly that its meaning is doubtful."

*Id.* at 13, quoting *Greenfield v. Philles Records, Inc.*, 98 N.Y.2d 562, 570, 573 (2002) (internal citations omitted). Here, the CBAs are silent as to lifetime vesting, and

17

the CSEA Plaintiffs ask us to infer ambiguity from what the CBAs *do not say* rather than anything they *do say*. For these reasons, we can now predict with confidence that the New York Court of Appeals would adopt not only *Tackett* but *Reese*, following the Second Department's approach in *Old Brookville* rather than the Third Department's approach in *Evans*.

To the extent that the CSEA Plaintiffs make an argument about ambiguity that they see as consistent with *Reese*, that argument is unavailing. They attempt to distinguish this case from *Reese*, and to liken it to *Kolbe*, by pointing out that the district court determined that the CBAs unambiguously created a vested lifetime right for retirees to continue receiving NYSHIP *coverage*, and arguing that "the *scope* of [that] benefit[], specifically the price term, is not clear from the language and is therefore ambiguous." Appellants' Supp. Letter-Br. at 3 (emphasis added). But here, unlike in *Kolbe*, there is no CBA provision granting retirees a lifetime vested right to the "same coverage" that they had in active service. *Kolbe*, 22 N.Y.3d at 355. Rather, the 2007-2011 CBA provides, *inter alia*, that "[e]mployees covered by the State Health Insurance Plan have the right to *retain health insurance* after retirement upon completion of ten years of service." J. App'x 923 (emphasis added). The CBAs are wholly silent as to whether that

18

health insurance must resemble the insurance that current retirees had while in active service. This case is thus more similar to *Reese* than to *Kolbe*, and as noted above, we are now confident that New York law tracks *Reese* and forecloses the sort of inference of ambiguity that the CSEA Plaintiffs ask us to draw.

The CSEA Plaintiffs give us no other reason, apart from the CBAs' silence on lifetime vesting, to infer that the CBAs are ambiguous on that issue. Because the CSEA Plaintiffs' breach of contract claim cannot succeed unless we read the CBA provisions that they cite as at least ambiguous, it cannot succeed as a matter of New York law.

Nor can we accept UUP's argument as *amicus curiae* that the CBAs' reference to the "State Health Insurance Plan," read against the background of the law in effect at the time, creates ambiguity as to lifetime vesting. For the proposition that we must look to existing law to interpret the CBAs, UUP cites *Association of Surrogates and Supreme Court Reporters Within the City of New York v. State of New York*, 940 F.2d 766 (2d Cir. 1991). The CBAs in that case provided that employees' "bi-weekly salaries" would be calculated based on 10 days of work, and the State began to lag those employees' payment by two weeks. *Id.* at 770. We held that the delayed payment impaired the CBAs because it had "the effect

19

of withholding ten percent of each employee's expected wages over a period of twenty weeks and postponing their payment indefinitely." *Id.* at 772. In the context of addressing the possible mootness of a request for declaratory and injunctive relief, we looked to a statute in effect at the time of the CBAs' adoption providing that salaries were due on a biweekly basis, and concluded that the "continued" lagging of paychecks thus "expressly impaired this obligation of immediate payment contained in the [CBAs]." *Id.* at 774.

That approach made sense in *Surrogates*, because the CBAs expressly referenced "bi-weekly salaries," and the statute's express provision filled in the essential detail of when those salaries became payable. But in the present case, § 167, like the CBAs, was totally *silent* on the question of lifetime vesting at the time that the CBAs were adopted. In effect, UUP asks us to draw from *statutory* silence the sort of inference that New York law does not allow us to draw from *contractual* silence. The fact that statutory provisions "generally do not have durational terms" unless otherwise specified, UUP *Amicus* Letter Br. 6, does not help to give that silence meaning, because statutes are subject to repeal and amendment, and legislatures frequently do repeal or amend them. Indeed, the State has repeatedly amended § 167 itself in response to changes in CBAs. It

20

cannot be, as UUP's position suggests, that the State exposes itself to liability every time it amends a statute to change the details of a benefit program referenced in a contract absent an express durational limit in the statute.[4]

For these reasons, we can confidently predict that if the New York Court of Appeals were to consider whether the CBA provisions at issue in this case are ambiguous as to the vesting of a lifetime right to a continuous contribution rate for retirees, it would answer that question in the negative. The district court was therefore correct to grant summary judgment to the State on the breach of contract claim without considering extrinsic evidence of the parties' intent.

## III.    Contractual Impairment

The CSEA Plaintiffs also contend that the State's amendment of the contribution rates impaired the CBAs in violation of the Contract Clause of the United States Constitution, which provides that "[n]o State shall . . . pass any . . .

---

[4] Indeed, the Third Department has held that § 167 did not itself create a vested right to continue receiving coverage with the contribution rates that it set out, for the statute "is more reasonably read as a policy determination regarding the state's contribution rate towards retiree health insurance premiums that is subject to later change at the will of the Legislature." *Matter of Retired Pub. Empls. Ass'n, Inc. v. Cuomo*, 123 A.D.3d 92, 97 (3d Dep't 2014); *see also New York State Court Officers Ass'n v. Hite*, 851 F. Supp. 2d 575, 582 (S.D.N.Y. 2012) (denying preliminary injunction for similar reasons), *affirmed*, 475 Fed. App'x 803 (2d Cir. 2012).

Law impairing the Obligation of Contracts." U.S. Const. art. I, § 10. In *Donohue II*, we noted that "the validity of the federal constitutional claim in this case hinges in substantial part on the same undecided state-law questions that control the state-law claim." 980 F.3d at 79. With the benefit of the answer of the New York Court of Appeals to our certified questions, we now hold that the State's adjustment of retirees' contribution rates did not violate the Contract Clause because the CSEA Plaintiffs lacked any contractual right to a vested lifetime contribution rate.

"[T]o establish a violation of the Contract Clause, Plaintiffs must establish: (1) the existence of the alleged contractual obligation; (2) the State's impairment of that obligation; (3) the substantiality of that impairment; and (4) that the impairment was not a reasonable and necessary means of effectuating a legitimate public purpose." *Id*. at 78. To resolve this case, we need not look beyond the first element.

Our conclusion that the CBAs do not create a vested lifetime right to continuous contribution rates for retirees as a matter of New York contract law is not completely dispositive of the Contract Clause claim, for "when a federal court 'is asked to invalidate a state statute upon the ground that it impairs the

22

obligation of a contract, the existence of the contract and the nature and extent of its obligation become federal questions for the purposes of determining whether they are within the scope and meaning of the Federal Constitution." *Id.* at 79, quoting *Irving Trust Co. v. Day*, 314 U.S. 556, 561 (1942). In certain exceptional cases, the state- and federal-law determinations of contractual rights may not align. "We 'accord respectful consideration and great weight to the views of the State's highest court,'" *General Motors Corp. v. Romein*, 503 U.S. 181, 187 (1992), quoting *Indiana ex rel. Anderson v. Brand*, 303 U.S. 95, 100 (1938), but we must determine for ourselves, "as a matter of constitutional law, whether a particular arrangement, of the sort normally enforceable as a contract under state law, is a contract protected by the Contract Clause; otherwise, states could always evade the restraint of the Clause by determining, through legislation or adjudication, that an arrangement previously regarded as a contract was no longer enforceable." *Pineman v. Oechslin*, 637 F.2d 601, 604 (2d Cir. 1981).

In the present case, we have no trouble concluding as a matter of federal law that the State's decision to increase retirees' contribution rates did not impair any constitutionally protected contractual obligations. As we noted in *Donohue II*, "[i]f, under New York law, the CBAs are properly interpreted so as to provide

only for non-vested contribution rates, we see no basis to conclude that the State is seeking to 'evade the restraint' of the Contract Clause by rendering a valid arrangement unenforceable," 980 F.3d at 79-80, quoting *Pineman*, 637 F.2d at 604, because "if the New York Court of Appeals were to interpret the CBAs in this manner, its interpretation would be consistent with the Supreme Court's interpretation of similar CBAs subject to federal law," *id.* at 80 n.16, citing *Tackett*, 574 U.S. at 442, and *Reese*, 138 S. Ct. at 766. Now that the New York Court of Appeals has interpreted the CBAs in line with the Supreme Court's federal-law decisions in *Tackett* and *Reese*, we see no reason to conclude that the State's alteration of contribution rates affected any cognizable contractual obligations as a matter of federal law. The Supreme Court rested its holding in both cases on "ordinary principles of contract law." *Tackett*, 574 U.S. at 438; *Reese*, 138 S. Ct. at 766. New York's refusal to recognize inferences of lifetime vesting (or ambiguity concerning that issue) from silence is therefore also rooted in ordinary contract-law principles. Moreover, New York's Court of Appeals is not the first state high court to expressly adopt *Tackett* or *Reese*. *See Kendzierski v. Macomb County*, 931 N.W.2d 604, 609-10 (Mich. 2019) (adopting *Tackett* and *Reese*); *Matthews v. Chicago Transit Authority*, 51 N.E.3d 753, 768-69 (Ill. 2016) (adopting *Tackett*). Accordingly,

we see no attempt to "evade the restraint of the [Contract] Clause . . . through legislation or adjudication," *Pineman*, 637 F.2d at 604, in New York's adoption of principles that leave the CSEA Plaintiffs with no contractual right to lifetime vesting – and thus no contractual entitlement that could be impaired.

Since no constitutionally protected obligation is at stake, we have no occasion to consider whether the State's alteration of the contribution rates impaired such an obligation, the substantiality of such impairment, or its reasonableness and necessity as a means of effectuating a legitimate public purpose. The district court therefore did not err in granting summary judgment to the State on the CSEA Plaintiffs' Contract Clause claim.

## CONCLUSION

For the foregoing reasons, we **AFFIRM** the judgment of the district court.

25