22-1979(L)
*N. Am. Photon Infotech, Ltd. v. ZoomInfo LLC*

# UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

## <u>SUMMARY ORDER</u>
### <u>(REDACTED)</u>

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 15th day of November, two thousand twenty-four.

PRESENT:
> SUSAN L. CARNEY,
> RICHARD J. SULLIVAN,
> EUNICE C. LEE,
> > *Circuit Judges.*

_____

NORTH AMERICA PHOTON INFOTECH LTD.,
a Mauritius private limited company,

> *Appellant-Cross-Appellee*,

v.                                                      Nos. 22-1979 (L),
                                                        22-2074 (XAP)

ZOOMINFO LLC, f.k.a. Discoverorg, LLC,

> *Appellee-Cross-Appellant*.[*]

_____

---

[*] The Clerk of Court is respectfully directed to amend the official case caption as set forth above.

For Appellant-Cross-Appellee:     MYRON MOSKOVITZ, Moskovitz
                                  Appellate Team, Piedmont, CA
                                  (Michael P. Pappas, Michael P.
                                  Pappas Law Firm, P.C., New York,
                                  NY, *on the brief*).

For Appellee-Cross-Appellant:     OREN J. WARSHAVSKY (Carrie A.
                                  Longstaff, Megan A. Corrigan, *on the
                                  brief*), Baker & Hostetler LLP, New
                                  York, NY.

Appeal from a judgment of the United States District Court for the Southern District of New York (John P. Cronan, *Judge*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the November 18, 2022 judgment of the district court is **AFFIRMED IN PART** and **VACATED IN PART**.

North America Photon Infotech Ltd. ("Photon") appeals the district court's grant of summary judgment as to liability in favor of ZoomInfo LLC ("ZoomInfo") on the parties' breach-of-contract claims and counterclaims relating to an End User License Agreement ("EULA") that granted Photon twelve months of access to ZoomInfo's database of business information. ZoomInfo cross-appeals the district court's determination of the amount of damages after a bench trial. We assume the parties' familiarity with the underlying facts, procedural history, and issues on appeal.

2

In its operative complaint, Photon alleged that ZoomInfo breached the EULA by knowingly including false data within the marketing contact records it supplied to Photon. ███████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

███████████████████████████████████████ ZoomInfo brought counterclaims for breach of contract and unjust enrichment, primarily alleging that Photon used ZoomInfo's data after the EULA had expired.

In an order dated June 8, 2020, the district court dismissed all of Photon's claims except for its breach-of-contract claim. The district court later granted summary judgment in favor of ZoomInfo with respect to liability on both Photon's claim and ZoomInfo's counterclaim for breach of contract, but found that there

were triable issues of fact relating to damages on the counterclaim. The district court subsequently held a bench trial on damages and issued a judgment in favor of ZoomInfo in the amount of $94,500 – well below the damages figure requested by ZoomInfo. Photon timely appealed the district court's grant of summary judgment on liability. ZoomInfo filed a cross-appeal challenging the district court's calculation of the damages award.

## I.     Summary Judgment Rulings

We review a district court's grant of summary judgment *de novo*. *Lucente v. Int'l Bus. Machs. Corp.*, 310 F.3d 243, 253 (2d Cir. 2002). Summary judgment is appropriate only when, after "examin[ing] the evidence in the light most favorable to, and draw[ing] all inferences in favor of, the non-movant," "there is no genuine issue as to any material fact" and "the moving party is entitled to a judgment as a matter of law." *Id.* (internal quotation marks omitted).

Under New York law, to make out a viable claim for breach of contract, a plaintiff must prove (1) "the existence of a contract," (2) "adequate performance of the contract by [the plaintiff]," (3) "breach of the contract by [the defendant]," and

(4) "damages."[1]  *24/7 Recs., Inc. v. Sony Music Ent., Inc.*, 429 F.3d 39, 41–42 (2d Cir. 2005) (emphasis omitted).   When construing a contract, we must first decide whether it is ambiguous – that is, "whether the language of the contract *and* the inferences to be drawn from it are susceptible to more than one reasonable interpretation."   *Seiden Assocs., Inc. v. ANC Holdings, Inc.*, 959 F.2d 425, 429 (2d Cir. 1992) (citation omitted).   When the terms of a contract are unambiguous, summary judgment may be granted so long as there are not genuine disputed issues of material fact relevant to performance, breach, or damages.   *See id.* at 428. Where a contract's language is ambiguous, its interpretation is generally "a question of fact to be resolved by the factfinder," although a court may appropriately resolve the ambiguity if "extrinsic evidence creates no genuine issue of material fact and permits interpretation of the agreement as a matter of law." *Compagnie Financiere de CIC et de L'Union Europeenne v. Merrill Lynch, Pierce, Fenner & Smith Inc.*, 232 F.3d 153, 158 (2d Cir. 2000) (internal quotation marks omitted). The existence of ambiguity in a contract is a question of law that we review *de novo*. *See Seiden Assocs., Inc.*, 959 F.2d at 429.

---

[1] Section 12 of the EULA provides that the agreement "shall be construed in accordance with . . . the laws of the State of New York."   Suppl. App'x at 459.

## A.    Photon's Breach-of-Contract Claim

Photon first argues that the district court erred in granting summary judgment in favor of ZoomInfo on Photon's claim that ZoomInfo breached the EULA by knowingly providing ███████ data to Photon.   Photon's primary argument is that section 5.1 of the EULA required ZoomInfo to provide Photon with access to "Licensed Materials," which in turn is defined as "all electronic information as described in any Ordering Document executed between the parties."   Suppl. App'x at 455, 457 (EULA §§ 1.2, 5.1).[2]   Photon reasons that because "Licensed Materials" under the EULA and the "Ordering Document" did not reference ███████████, ZoomInfo materially breached the EULA by ████████████████████ the data downloaded by Photon.   We disagree.

As the district court noted, neither section 5.1 nor the Ordering Document precluded ████████████████████████ the datasets that Photon downloaded.   Nor did the EULA or Ordering Document bar ZoomInfo from

---

[2] The Ordering Document, which reads like an order form, identifies the "dataset" and "user access" subscriptions that Photon purchased.   Suppl. App'x at 318.   It goes on to note that each subscription "will include access to the contract- and company-level information for companies and contacts within [the] selected Geographies, Company Sizes, and Departments that are profiled by [ZoomInfo] during the [EULA] Term," and then provides a short description of different subscription options within those categories.   *Id.* at 319.

taking steps to protect its own intellectual property. It is settled New York law that "[e]ven where a contingency has been omitted" – here, the prohibition against employing security measures like the ████████ – "we will not necessarily imply a term since courts may not by construction add or excise terms, nor distort the meaning of those used and thereby make a new contract for the parties under the guise of interpreting the writing." *Reiss v. Fin. Performance Corp.*, 97 N.Y.2d 195, 199 (2001) (internal quotation marks omitted). Indeed, when applying New York law, "[c]ourts should be 'extremely reluctant' . . . to imply a term that 'the parties have neglected to specifically include,'" and while courts may do so "*if the contract is ambiguous,*" "an omission . . . does not automatically render a contract ambiguous." *In re World Trade Ctr. Disaster Site Litig.*, 754 F.3d 114, 122–23 (2d Cir. 2014) (quoting *Vt. Teddy Bear Co. v. 538 Madison Realty Co.*, 1 N.Y.3d 470, 475 (2004)). Thus, we conclude that the EULA was not ambiguous as to whether ZoomInfo could ███████████████ its datasets merely because it contained no express grant of permission regarding the security measure and that ZoomInfo was not "prohibited from using the [████████] in the absence of explicit contract language authorizing such use[]." *Greenfield v. Philles Recs., Inc.*, 98 N.Y.2d 562, 570 (2002); *see Donohue v. Hochul*, 32 F.4th 200, 208 (2d Cir. 2022)

7

(acknowledging the "established principle of New York contract law that counsels against inferring ambiguity from silence," namely, that "[a] contract's silence on an issue does not create an ambiguity" and "an ambiguity never arises out of what was not written at all, but only out of what was written so blindly and imperfectly that its meaning is doubtful" (internal quotation marks omitted)).

For its part, Photon strains to portray the ████████ as "phony" or "fake" data that fell outside the definition of "Licensed Materials." *E.g.*, Photon Br. at 30, 32. But even accepting Photon's characterization, the EULA clearly contemplated that the delivery of some inaccurate data alone was not sufficient to constitute a breach of the parties' agreement. Indeed, section 5.2 provided that Photon was allowed to terminate the contract only if "more than 5% of" the data supplied by ZoomInfo turned out to be inaccurate. Suppl. App'x at 457. Section 5.2 would be "render[ed] . . . meaningless" if providing *any* amount of inaccurate data would result in a breach on the part of ZoomInfo, and we must, "if possible," "avoid[]" "adopting [such] an interpretation that would render any individual provision superfluous." *Int'l Multifoods Corp. v. Com. Union Ins. Co.*, 309 F.3d 76,

8

86 (2d Cir. 2002) (internal quotation marks omitted).[3]

Photon next contends that the district court erred in rejecting its argument that ZoomInfo breached the implied covenant of good faith and fair dealing by intentionally ███████████████ the data supplied to Photon. Under the covenant of good faith and fair dealing, "neither party shall do anything which will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract." *Sec. Plans, Inc. v. CUNA Mut. Ins. Soc.*, 769 F.3d 807, 817 (2d Cir. 2014) (quoting *Moran v. Erk*, 11 N.Y.3d 452, 456 (2008)). At the same time, the implied covenant "does not extend so far as to undermine a party's general right to act on its own interests in a way that may incidentally lessen the other party's" expected benefit under the contract. *M/A-COM Sec. Corp. v. Galesi*, 904 F.2d 134, 136 (2d Cir. 1990) (internal quotation marks omitted).

Here, it is undisputed that ZoomInfo used the ██████████ to enforce the EULA's termination and unauthorized-use provisions. *See Sec. Plans, Inc.*, 769 F.3d at 820 (observing that, where a party has "a genuine and colorable business

---

[3] Even by Photon's count, ██████████ constituted only 0.39% of the total data it exported from ZoomInfo, so section 5.2 itself does not provide an independent basis for Photon's breach-of-contract claim. *See* Photon App'x at 294.

9

justification," its actions "will not have violated the implied covenant"). In essence, ZoomInfo ███████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

████████ – to monitor whether Photon and third parties were improperly using its data. Photon does not meaningfully explain or cite to admissible evidence as to how the use of this security measure, which accounted for a tiny percentage of the data exported by Photon from ZoomInfo, caused it harm or otherwise interfered with its ability to receive the benefits of the EULA. We therefore see no error in the district court's grant of summary judgment in favor of ZoomInfo on Photon's breach-of-contract claims.

## B.   ZoomInfo's Breach-of-Contract Counterclaim

Photon next argues that the district court erred in finding, at summary judgment, that Photon breached the EULA by (1) failing to destroy ZoomInfo's data after the contract termination date, (2) continuing to use the data, and (3) providing ZoomInfo's data to a third party, Packyge.   Again, we disagree.

Section 7.2 of the EULA provided that "[u]pon expiration or termination of this [a]greement, [Photon] agrees to destroy any and all copies of Licensed

Materials and any information it has obtained from the Licensed Materials, whether in hard copy or electronic form." Suppl. App'x at 458. Accordingly, Photon could access ZoomInfo's data for one year until May 11, 2018, and could download data until April 11, 2018, *i.e.*, thirty days prior to the termination date of the contract. While the parties negotiated a potential renewal of the contract, ZoomInfo temporarily extended Photon's download privileges until early May 2018 and its data access until May 16, 2018. But based on the undisputed evidence, ███████████████████████████████████, Photon continued to use ZoomInfo data until August 13, 2020. In fact, Photon has never denied that it was using ZoomInfo's service well beyond the May 2018 deadline.

Instead, Photon primarily responds that, under section 6.4 of the EULA, it needed to use only "commercially reasonable efforts" when carrying out its obligation under section 7.2 to destroy and cease using the Licensed Materials after the agreement's termination date. Photon Br. at 41, 43–44; *see* Suppl. App'x at 458. But it is clear from its face that section 6.4, which was titled "Protection from Unauthorized Use," pertained to Photon's obligation to safeguard ZoomInfo's data from use by others – not Photon's own obligation to destroy or stop using ZoomInfo's data after the termination date. *See* Suppl. App'x at 458. Indeed,

nothing in section 7.2 referenced commercially reasonable or good-faith efforts. We therefore reject Photon's attempt to insert into the contract a term for which the parties never bargained. *See L. Debenture Tr. Co. of N.Y. v. Maverick Tube Corp.*, 595 F.3d 458, 468 (2d Cir. 2010).

Finally, it is beyond dispute that Photon breached section 4.2 of the EULA, which prohibited the disclosure of the Licensed Materials to third parties, by sharing ZoomInfo's data with Packyge. As Photon conceded at summary judgment, between January and March 2018, Packyge employees ███████████ ████████████████████████████████████████████████ █████████ .

For all these reasons, we conclude that the district court did not err in granting summary judgment on liability in favor of ZoomInfo on its breach-of-contract counterclaim.

## II. Damages for Photon's Breach of the EULA

"[W]ith respect to the district court's determination of damages, we review the legal question of the applicable damages measurement *de novo*" and "[t]he [factual] question of the amount of recoverable damages . . . for clear error." *Bessemer Tr. Co. v. Branin*, 618 F.3d 76, 85 (2d Cir. 2010) (internal quotation marks

omitted).    Under the clear error standard, "[w]e will not upset a factual finding unless we are left with the definite and firm conviction that a mistake has been committed."    *Id.* (internal quotation marks omitted).

Here, the district court first determined that ███████ per year "best reflect[ed]" the "value" of ZoomInfo's "services[,]" ZoomInfo Sp. App'x at 37, based on evidence of ZoomInfo's general contracting and renewal practices, which included the use of promotional discounts off its standard list prices; the parties' contract-renewal negotiations; and the average price paid by ZoomInfo clients at the time.    The district court then adjusted this figure downward by ten percent – to ██████ per annum – to account for the fact that ZoomInfo did not update its data during the period of Photon's unauthorized use.    *See id.* at 37–38.    The court prorated this annual value of ZoomInfo's subscription to █████ per month, *id.* at 38, and then multiplied that monthly value by twenty-one to reflect its finding that Photon and Packyge used ZoomInfo's data without authorization for nineteen and two months, respectively, *id.* at 40.    Consequently, the district court awarded ZoomInfo damages in the amount of $94,500.    *Id.*

On appeal, ZoomInfo first argues that the district court should have awarded damages based on its standard subscription list price, *i.e.*, $106,500 per

year, instead of a discounted ██████ per year. We are not persuaded. ZoomInfo contends that the district court erroneously deviated from its "expected contract damages (its standard list price) and instead determined a separate market value" for the data at the time of breach. ZoomInfo Br. at 56. But ZoomInfo does not meaningfully explain why expectation damages in an amount equal to its standard list price are the appropriate measure of damages here – when Photon paid ██████ under the EULA for the year of ZoomInfo's services, and there was no EULA in place after its termination in May 2018. *See Latham Land I, LLC v. TGI Friday's, Inc.*, 948 N.Y.S.2d 147, 151–52 (2012) (explaining expectation damages as measured "by what it would take to put the non-breaching party in the same position that it would be in had the breaching party performed as promised under the contract").[4]

Instead of accepting ZoomInfo's listed subscription price, the district court calculated a fair "market value" for the unauthorized use of the data, ZoomInfo Sp. App'x at 35, 39 – in effect, the "reasonable license fee" that ZoomInfo itself

---

[4] We note that ZoomInfo asserted an unjust enrichment claim only in the alternative; the district court dismissed it at summary judgment without prejudice, and ZoomInfo does not challenge that ruling on appeal.

requested in its amended counterclaim complaint. Photon App'x at 117. ZoomInfo's own authority supports that approach, *see, e.g.*, *Med. Coll. of Wis. Inc. v. Attachmate Corp.*, No. 15-cv-151 (JPS), 2016 WL 697145, at *16 (E.D. Wis. Feb. 19, 2016), as do our factually analogous precedents on the misuse or misappropriation of intellectual property, which recognize a hypothetical reasonable license fee as an appropriate measure of damages, *see, e.g.*, *On Davis v. The Gap, Inc.*, 246 F.3d 152, 167 (2d Cir. 2001) (approving, in the copyright infringement context, a measure of damages as "the reasonable license fee on which a willing buyer and a willing seller would have agreed for the use taken by the infringer"); *Vt. Microsystems, Inc. v. Autodesk, Inc.*, 88 F.3d 142, 151 (2d Cir. 1996) (describing a "reasonable royalty award," in a trade secret case, as "what the parties would have agreed to as a fair licensing price at the time that the misappropriation occurred" "had they bargained in good faith").

In the end, then, ZoomInfo's argument boils down to a disagreement with the district court's factual determination of a reasonable license fee. But as the district court found, and ZoomInfo does not meaningfully dispute, "███████ ███████████████████████" given its ██████ offering of promotional discounts. ZoomInfo Sp. App'x at 37. And in the months before and after the

15

EULA's expiration, when the parties were negotiating a renewal, ZoomInfo had pitched annual prices ranging from ▓▓▓▓ to ▓▓▓▓. Importantly, as the district court found, ▓▓▓▓ was "in line with" both "the average price point clients [were] . . . paying" at the time according to ZoomInfo and the ▓▓▓▓

▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

▓▓▓▓. *Id.* at 36–37 (quoting Suppl. App'x at 512). We therefore find no clear error in the district court's findings that ZoomInfo's listed annual price of $106,500 was not the appropriate measure of damages in this case.

We agree with ZoomInfo, however, that the district court erred in calculating damages on a per-month basis instead of a per-year basis. As a matter of common sense, an award for lost subscription or license fees contemplates the value of (or fee for) the services provided or licensed over a designated period of time. Contrary to the district court's finding, the record *did* contain evidence that ZoomInfo's subscription agreements were offered on no less than annual terms, particularly in relation to Photon. Specifically, Photon's agreement with ZoomInfo was for a term of 12 months, and evidence submitted at trial indicated that ZoomInfo, in its contract renewal discussions with Photon, offered extension terms of 12, 24, 36, and 48 months, with corresponding annual prices for each

16

option.[5]   The fact that ZoomInfo agreed to give Photon a one-week unpaid extension on its access to ZoomInfo's data – in the midst of contract renewal discussions that contemplated terms at different yearly increments – does not support an award of damages on a monthly basis.   Indeed, neither the district court's decision below nor the parties on appeal point to any evidence suggesting that ZoomInfo ever offered their services for any term other than annual ones. Accordingly, we conclude that ZoomInfo is entitled to damages on annual terms, for the yearly periods in which Photon (and Packyge) misused ZoomInfo's data in violation of the EULA.

This conclusion resolves, in large part, ZoomInfo's final argument that the district court erred by awarding damages only for the months that Photon and Packyge actively used its data.   With respect to damages that ZoomInfo seeks for

---

[5] In support of its conclusion to award damages on a *pro rata* monthly basis, the district court, citing the direct testimony of ZoomInfo's Senior Director of Revenue Operations Samantha Montgomery, noted that ZoomInfo had "at one point offered a twenty-six month renewal" to Photon.   ZoomInfo Sp. App'x at 42.   Indeed, Montgomery's testimony, which cited and summarized an April 12, 2018 email sent by one of ZoomInfo's managers to employees at Photon, notes a "24- or 26- month renewal" option.   Suppl. App'x at 430.   The April 12, 2018 email itself, however, clearly sets out a "24 or *36* Month Renewal" option with an accompanying annual rate. *Id.* at 475 (emphasis added).   In other words, the reference in Montgomery's testimony to an offered twenty-six month renewal term, which ZoomInfo repeats in its brief on appeal, appears to be a typo.   The fact that ZoomInfo's offer included a three-year term further supports awarding damages on an annual basis.

additional periods during which it contends Photon and Packyge possessed, rather than used, its data, we see no error in the district court's conclusions. In effect, the district court determined that there was an insufficient record as to Photon and Packyge's continued possession, and ZoomInfo was not entitled to any factual finding in its favor or adverse inference against Photon or Packyge under Federal Rule of Civil Procedure 37 – rulings that ZoomInfo does not meaningfully challenge on appeal. *See Norton v. Sam's Club*, 145 F.3d 114, 117 (2d Cir. 1998) ("Issues not sufficiently argued in the briefs are considered [forfeited] and normally will not be addressed on appeal.").

\* \* \*

We have considered the parties' remaining arguments and find them to be without merit. Accordingly, we **AFFIRM** the judgment as it pertains to liability, and **VACATE** the judgment solely as to the amount of damages, and **REMAND** for further proceedings consistent with this decision.

> FOR THE COURT:
> Catherine O'Hagan Wolfe, Clerk of Court

18